JOAN P. STACY AND SUSAN P. HUFFAKER, Executrixes of the Estate of JOHN R. PURSER, JR., Plaintiff v. JEDCO CONSTRUCTION, INC., Defendant

No. 9416SC344

Filed 6 June 1995

**1. Negligence § 29 (NCI4th)— diminished ability due to senility—capacity for contributory negligence**

One whose mental faculties are diminished, not amounting to total insanity, is capable of contributory negligence, but is not held to the objective reasonable person standard; rather, such a person should be held only to the exercise of such care as he was capable of exercising, i.e., the standard of care of a person of like mental capacity under similar circumstances. Therefore, the issue of the contributory negligence of plaintiffs' father, who suf-

STACY v. JEDCO CONSTRUCTION, INC.

[119 N.C. App. 115 (1995)]

fered mental incompetence due to senility, in going onto defendant's construction site was properly submitted to the jury.

**Am Jur 2d, Negligence §§ 954-957.**

**Comment Note.—Contributory negligence of mentally incompetent or mentally or emotionally disturbed person. 91 ALR2d 392.**

**2. Negligence § 38 (NCI4th)— personal injury—negligence of injured party's caretaker—insufficiency of evidence of imputed contributory negligence**

In an action to recover for personal injury to plaintiffs' father sustained when he wandered from the care of his "sitter" onto defendant's construction site, the evidence was insufficient to support a finding of negligence, imputable to the father, on the part of the "sitter," and it was error for the court to submit the issue of imputed contributory negligence to the jury.

**Am Jur 2d, Negligence § 1752.**

**3. Negligence § 165 (NCI4th)— contributory negligence— instructions erroneous**

Where the issue of contributory negligence as framed to the jury presented the separate questions of whether plaintiffs' father contributed to his injury by his own negligence or whether he was contributorily negligent through the imputed negligence of his "employee," the jury was given questions to which it might give separate answers, allowing them to answer the issue without reaching a unanimous verdict as to either proposition and thereby rendering an uncertain verdict.

**Am Jur 2d, Negligence § 29.**

**4. Negligence § 106 (NCI4th)— fall at construction site—negligence of contractor—sufficiency of evidence**

The evidence was sufficient to support a finding that plaintiffs' father fell and was injured as a proximate result of negligence on the part of defendant contractor where it tended to show that the father wandered from a nursing home facility onto defendant's construction site, and defendant's superintendent saw the father on the site and directed him across the site to a doorway which had been designated a hazardous area, rather

than escorting him away from the site in the direction from which he had entered.

**Am Jur 2d, Premises Liability § 29.**

Appeal by plaintiff from judgment entered 30 September 1993 and order entered 3 November 1993 by Judge D. Jack Hooks, Jr., in Robeson County Superior Court. Heard in the Court of Appeals 16 November 1994.

This action was commenced by Joan P. Stacy as guardian *ad litem* for John R. Purser, Jr. to recover compensatory and punitive damages for personal injuries sustained by Mr. Purser due to alleged negligence of defendants Jedco Construction, Inc., (Jedco) and Methodist Retirement Homes, Inc., d/b/a/ Wesley Pines Retirement Home (Wesley Pines). Both defendants asserted, *inter alia*, the contributory negligence of Mr. Purser as a defense to the action. A recitation of the procedural history of the case is unnecessary to an understanding of the issues presented by this appeal except to note that Mr. Purser died on 31 July 1992, during the pendency of the action, and the executrixes of his estate were substituted as plaintiffs. During the trial, plaintiffs reached a settlement with, and voluntarily dismissed their claim against, defendant Wesley Pines. Plaintiffs proceeded, however, with their claim against Jedco.

At trial, plaintiffs' evidence tended to show that in February 1984, Mr. Purser and his wife relocated from Charlotte to Lumberton to be closer to their daughter, Joan Stacy, and her family. Due to Mr. Purser's age and Mrs. Purser's declining health, the couple moved into Wesley Pines, a retirement community and nursing home. Mrs. Purser died in August 1984.

Prior to his retirement, Mr. Purser had been a professional engineer. At the time he entered Wesley Pines, he was approximately eighty years of age and was in good physical health for his age. He did, however, suffer from senile dementia, with progressively worse short term memory loss, and had had cataract surgery and wore thick eyeglasses. Upon first entering Wesley Pines in 1984, Mr. Purser's mental faculties were sufficient to allow him to live by himself in an apartment. By December 1987, however, his senility had progressed to the point that it was necessary that he be moved from his individual apartment to the center's main nursing home facility.

Mr. Purser had been an athlete while in college; had briefly played semi-professional basketball, and he had continued to play golf until shortly before the injury which is the subject of this suit. To maintain his physical fitness, Mr. Purser regularly walked throughout the Wesley Pines campus, and he continued to do so even after his move to the main facility and despite his almost total loss of short term memory ability.

In March 1989, Jedco began work on a construction project to expand the main facility at Wesley Pines. Although the original construction site diagrams indicated perimeter fencing would be used to prevent residents of Wesley Pines from entering the site, no barriers were erected. Mr. Purser showed a keen interest in the construction, and he repeatedly visited and entered into the construction area during his walks around the Wesley Pines grounds. Jedco's project superintendent, Richard Woosley, informed management at Wesley Pines of Mr. Purser's repeated entries onto the site, and Mr. Purser was warned to stay out. Unfortunately, his memory difficulties made these warnings ineffective. In response, a yellow ribbon or tape was used to cordon off the area, but Mr. Purser continued to enter onto the construction site.

After discussion with Rev. Paul Bunn, the administrator of Wesley Pines, Joan Stacy hired "sitters" to keep an eye on her father from 9:00 in the morning until 5:00 in the afternoon, the approximate hours during which construction took place. This arrangement was successful in preventing further intrusions by Mr. Purser into the construction area from 25 April 1989 until the afternoon of 18 May 1989. At approximately 5:00 that afternoon, Mr. Purser again entered the construction area. He was met by Richard Woosley, who began escorting him away from the site in the direction from which he had come. However, employees of Wesley Pines who had also noticed Mr. Purser's presence on the construction site called to him to come towards them, at a rear entrance to the main facility which opened onto the construction site. This entranceway had been designated by Jedco as a hazardous area and a hard hat zone. Woosley then allowed Mr. Purser to change direction and walk alone across the construction area to this entrance. Plaintiffs offered evidence that a wooden ramp which led up to the entrance had a gap between the ramp and the door, and that there was a difference of several inches from the top of the ramp to the floor of the hallway, requiring one to step up into the building. Upon reaching the building and attempting to enter, Mr. Purser fell and fractured his hip. Plaintiffs contended that Mr.

## STACY v. JEDCO CONSTRUCTION, INC.

[119 N.C. App. 115 (1995)]

Purser had tripped over the uneven portion while crossing the ramp and entering the door.

At the close of plaintiffs' evidence, Jedco's motion for a directed verdict was denied. Jedco did not offer evidence, and plaintiffs' motion for a directed verdict as to Jedco's affirmative defense of contributory negligence was also denied. The trial court granted defendant's motion for directed verdict as to·plaintiffs' claim for punitive damages.

Three issues were submitted to the jury and answered as follows:

**ISSUE NUMBER ONE:**

1. Was the plaintiff, John R. Purser, Jr., injured or damaged by the negligence of the defendant, Jedco Construction, Inc.?

**ANSWER: YES**

**ISSUE NUMBER TWO:**

2. Did the plaintiff, John R. Purser, Jr., or his employees, by their own negligence, contribute to his injury or damage?

**ANSWER: YES**

**ISSUE NUMBER THREE:**

3. What amount is the plaintiff, John R. Purser, Jr., entitled to recover for personal injuries?

**ANSWER: N/A**

Judgment was entered on the jury's verdict and plaintiffs' motions for judgment notwithstanding the verdict pursuant to N.C. Gen. Stat. § 1A-1, Rule 50(b), and alternatively, for a new trial pursuant to N.C. Gen. Stat. § 1A-1, Rule 59, were denied. Plaintiffs appeal.

*Anderson, Broadfoot, Johnson, Pittman, Lawrence & Butler, by Steven C. Lawrence, for plaintiff-appellants.*

*McCoy, Weaver, Wiggins, Cleveland & Raper, by Richard M. Wiggins and Rodney B. Davis, for defendant-appellee.*

MARTIN, JOHN C., Judge.

Plaintiffs' assignments of error and contentions focus on the second issue submitted to the jury; i.e., the issue of contributory negligence. By cross-assignments of error, defendant Jedco contends its

motion for directed verdict should have been granted and the issue of its negligence should not have been submitted to the jury. For the reasons stated herein, we hold plaintiffs are entitled to a new trial on the issue of Mr. Purser's contributory negligence.

I.

A.

[1] Plaintiffs initially argue they were entitled to a directed verdict as to Jedco's affirmative defense alleging that Mr. Purser was contributorily negligent. The basis for their argument is that Mr. Purser's mental incompetence due to senility rendered him incapable of contributory negligence. We have not found a case in North Carolina dealing with the issue of whether an adult whose mental capacity has been impaired or diminished due to advanced age, disease, or senility is capable of contributory negligence. Our Supreme Court has held "one who has *capacity to understand* and avoid a known danger" is contributorily negligent if he fails to take advantage of the opportunity to avoid the danger and is injured, *Presnell v. Payne*, 272 N.C. 11, 13, 157 S.E.2d 601, 602 (1967) (emphasis added); and one cannot be guilty of contributory negligence "unless he acts or fails to act *with knowledge and appreciation*, either actual or constructive, of the danger of injury which his conduct involves." *Chaffin v. Brame*, 233 N.C. 377, 380, 64 S.E.2d 276, 279 (1951). It is generally held that one "who is so insane or devoid of intelligence as to be totally unable to apprehend danger and avoid exposure to it is not a responsible human agency and cannot be guilty of contributory negligence." 57A Am. Jur. 2d *Negligence* § 954 (1989). However, where an injured plaintiff suffers from diminished mental capacity not amounting to insanity or total incompetence, it is a question for the trier of fact as to whether he exercised the required degree of care for his own safety, and the effect of his diminished mental faculties and capabilities may be taken into account in determining his ability to perceive and avoid a particular risk of harm. *Id.* at § 956. Thus, we hold that one whose mental faculties are diminished, not amounting to total insanity, is capable of contributory negligence, but is not held to the objective reasonable person standard. Rather, such a person should be held only to the exercise of such care as he was capable of exercising, i.e., the standard of care of a person of like mental capacity under similar circumstances. *Fields v. Senior Citizens Center, Inc.*, 528 So. 2d 573 (La. App., 2 Cir. 1988) (person who suffers from impaired senses due to old age held to a relaxed standard of care); *Cowan v. Doering*, 545

**STACY v. JEDCO CONSTRUCTION, INC.**

[119 N.C. App. 115 (1995)]

A.2d 159 (N.J. 1988) (mentally disturbed plaintiff's conduct measured in light of plaintiff's mental condition); *Young v. New York Dept. of Social Services*, 401 N.Y.S.2d 955, 92 Misc. 2d 795 (N.Y. 1978) (plaintiff held to no greater degree of care for own safety than he is capable of exercising); *Feldman v. Howard*, 214 N.E.2d 235 (Ohio App. 1966), *rev'd on other grounds*, 226 N.E.2d 564 (Ohio 1966) (mentally deficient plaintiff held only to exercise of faculties and capacities with which she was endowed); *Snider v. Callahan*, 250 F. Supp. 1022 (W.D. Mo. 1966); *see* Annot., *Contributory Negligence of Mentally Incompetent or Mentally or Emotionally Disturbed Person*, 91 A.L.R.2d 392 (1963).

We have reviewed the other arguments urged by plaintiffs in support of their contention that the trial court erred by denying their motions for directed verdict and judgment notwithstanding the verdict as to the issue of Mr. Purser's contributory negligence, and conclude they are without merit. We hold that the issue of Mr. Purser's contributory negligence was properly for the jury.

B.

**[2]** In its answer, Jedco also alleged that Mr. Purser's "sitter" had neglected her duties and that her negligence was imputed to Mr. Purser. Plaintiffs contend the trial court erred by denying their motion for directed verdict as to the defense of imputed contributory negligence. We agree.

Jedco had the burden of proving the "sitter" was negligent in order to impute such negligence to Mr. Purser and bar plaintiffs' recovery. N.C. Gen. Stat. § 1-139. (Party asserting contributory negligence has burden of proving such defense). The "sitter", who was not identified at trial, was employed by Joan Stacy, who was acting for her father pursuant to a power of attorney. Thus, the sitter was acting as Mr. Purser's subagent. The traditional view has been that a principal is liable for the torts of his authorized subagent to the same extent as he is liable for the torts of his primary agent, 3 C.J.S. *Agency* § 431 (1973), and the general rule is that "if the principal or master is injured by the negligence of a third party and by the concurring contributory negligence of his own servant or agent, the negligence of the servant acting within the scope of his employment or the agent acting within the scope of his power to bind the principal may be imputed to the master or principal." Annot., *Imputation of Servant's or Agent's Contributory Negligence to Master or Principal*, 53 A.L.R.3d 664, 666

(1973); *see Olympic Products Co. v. Roof Systems, Inc.*, 88 N.C. App. 315, 363 S.E.2d 367 (1988).

However, one relying on the defense of contributory negligence must prove facts from which such negligence may reasonably be inferred, and evidence which raises only a bare conjecture is insufficient to warrant submission of the issue to the jury. *Bruce v. Flying Service*, 234 N.C. 79, 66 S.E.2d 312 (1951); *Tharpe v. Brewer*, 7 N.C. App. 432, 172 S.E.2d 919 (1970). The evidence disclosed that Joan Stacy had employed "sitters" from 9:00 A.M. until 5:00 P.M. as suggested by Rev. Bunn, the administrator. Mr. Purser's injury occurred in the vicinity of 5:00 P.M. The only evidence with respect to the actions of the unidentified "sitter" came through the testimony of Rev. Bunn, who testified that after the "sitter" was employed, Mr. Purser had not gone back out to the construction site "until he fell, and that's when the sitter had gone to the bathroom. He (Mr. Purser) was on the telephone. He immediately hung up the telephone, **we think**, as soon as she—**must have** as soon as she went to the bathroom, and out the door he went . . .". (emphasis added).

The evidence leaves for mere conjecture the questions of how Mr. Purser left the building, whether the "sitter" had completed her shift, and even if she had not, whether her conduct in going to the bathroom while Mr. Purser was engaged in a telephone conversation was a breach of her duty. Just as negligence cannot be inferred from the mere fact of injury, the negligence of one's caretaker cannot be inferred from the mere fact that the person in her care suffers an accidental injury. *See Jeffreys v. Burlington*, 256 N.C. 222, 123 S.E.2d 500 (1962). We hold the evidence was insufficient to support a finding of negligence, imputable to Mr. Purser, on the part of the "sitter", and it was error for the court to submit the issue to the jury.

C.

**[3]** We also conclude that the trial court committed error by the manner in which it phrased the issue of contributory negligence. The form and number of issues submitted is within the court's discretion. *Wilson v. Pearce*, 105 N.C. App. 107, 412 S.E.2d 148, *disc. review denied*, 331 N.C. 291, 417 S.E.2d 72 (1992). Nevertheless, the issues should be formulated so as to present separately the determinative issues of fact arising on the pleadings and evidence. *Trucking Co. v. Dowless*, 249 N.C. 346, 106 S.E.2d 510 (1959). "[I]t is misleading to embody in one issue two propositions as to which the jury might give different responses." *Foy v. Spinks*, 105 N.C. App. 534, 538, 414 S.E.2d

87, 88 (1992), quoting *Edge v. North State Feldspar Corp.*, 212 N.C. 246, 247, 193 S.E. 2 (1937).

The issue as framed to the jury in the instant case presented the separate questions of whether Mr. Purser contributed to his injury by his own negligence or whether he was contributorily negligent through the imputed negligence of his "employees". These questions were propositions to which the jury might give separate answers, allowing the jury to answer the issue without reaching a unanimous verdict as to either proposition. Therefore, the jury's verdict is uncertain. *See Edge, supra.* Plaintiffs were obviously prejudiced by the error, especially in view of our holding that the issue of imputed contributory negligence was improperly submitted.

## D.

By reason of errors as set forth above, we conclude plaintiffs are entitled to a new trial on the issue of contributory negligence.

## II.

[4] By cross-assignments of error pursuant to N.C.R. App. P. 10(d), Jedco contends the trial court should have granted its motion for directed verdict as to plaintiff's claim against it. Jedco argues there was insufficient evidence of actionable negligence on its part to take the case to the jury. We find no merit in its arguments.

When ruling upon a defendant's motion for a directed verdict, the evidence must be considered in the light most favorable to the plaintiff, and the plaintiff must be given the benefit of every reasonable inference which may be drawn therefrom. *Manganello v. Permastone*, Inc., 291 N.C. 666, 231 S.E.2d 678 (1977). The motion should not be granted unless the plaintiff would not be entitled to recover under any set of facts reasonably established by the evidence. *Id.* The grounds for the motion must be specifically stated, N.C. Gen. Stat. § 1A-1, Rule 50(a), and an appellate court will not consider grounds other than those stated to the trial court in reviewing the trial court's ruling on the motion. *La Grenade v. Gordon*, 60 N.C. App. 650, 299 S.E.2d 809 (1983); *see Feibus & Co. v. Construction Co.*, 301 N.C. 294, 271 S.E.2d 385 (1980).

Jedco first argues that its motion for a directed verdict should have been granted because Mr. Purser was a mere licensee upon the construction site, and Jedco owed him only a duty not to wilfully injure him and not to wantonly and recklessly expose him to danger.

STACY v. JEDCO CONSTRUCTION, INC.

[119 N.C. App. 115 (1995)]

However, at trial, Jedco did not offer Mr. Purser's status as a ground for its motion for directed verdict and is, therefore, precluded from making the argument for the first time on appeal. *La Grenade, supra.*

Jedco's remaining contention is that the evidence was insufficient to support plaintiffs' claim that Jedco's negligence was a proximate cause of Mr. Purser's fall and resulting injuries. However, the evidence tended to show that when Jedco's superintendent, Richard Woosley, saw Mr. Purser on the construction site, he directed him across the site to a doorway which had been designated a hazardous area, rather than escorting Mr. Purser away from the site in the direction from which he had entered. David Royal, an employee of an electrical subcontractor on the project, testified that Mr. Purser's foot got caught on the threshold to the door as he attempted to enter; there was testimony from Mr. Purser's grandson that minutes after the fall, he observed a gap between the door and the ramp leading up to it, as well as a difference between the height of the ramp and the doorsill. When he later attempted to bring the ramp flush with the door, the ramp was higher than the doorsill and prevented the door from opening. Though Richard Woosley denied the ramp was in the position testified to by other witnesses at the time of Mr. Purser's fall, he admitted that if a gap or difference in elevation had existed, it would not have been safe. We hold that the evidence, considered in the light most favorable to the plaintiffs, and giving them the benefit of the reasonable inferences which may be drawn therefrom, is sufficient to support a finding that Mr. Purser fell and was injured as a proximate result of negligence on the part of Jedco. The trial court did not err by denying Defendant Jedco's motion for directed verdict.

III.

In summary, we find no error in the denial of defendant Jedco's motion for directed verdict nor in the denial of plaintiffs' motion for directed verdict on the issue of Mr. Purser's own contributory negligence. However, for the reasons stated above, we hold that the trial court erred by permitting the jury to consider whether plaintiffs are barred from recovery by reason of the contributory negligence of Mr. Purser's "sitter", and that such error necessitates a new trial on the issue of contributory negligence.

No error in part, reversed in part, and remanded for a new trial on the issue of contributory negligence.

Chief Judge ARNOLD and Judge JOHNSON concur.