THE ESTATE OF ADA T. SMITH, BY AND THROUGH HER EXECUTOR, JAMES T. SMITH; ADA KELLY SMITH HINES; JANE ELIZABETH SMITH YEARGAN; THE ESTATE OF MARIE SMITH WALLACE BY AND THROUGH HER EXECUTOR, JAMES T. SMITH; MARVIN SIMEON HONEYCUTT, INDIVIDUALLY AND AS SECRETARY OF SMITH-S, INC., SUE WORTHINGTON SMITH; JAMES THOMAS SMITH, INDIVIDUALLY, AS TRUSTEE OF THE W. H. SMITH TRUST, AS TRUSTEE OF THE ADA T. SMITH TRUST, AND AS PRESIDENT OF SMITH-S, INC., AND WIFE, DOROTHY COBB SMITH, ALFRED LEWIS SMITH, INDIVIDUALLY AND AS VICE-PRESIDENT OF SMITH-S, INC., AND WIFE, JEAN NEWKIRK SMITH; AND SMITH-S, INC., A NORTH CAROLINA CORPORATION, PLAINTIFFS v. SAM B. UNDERWOOD, JR.; JAMES G. SULLIVAN; AND JOHN C. PROCTOR & COMPANY, DEFENDANTS

No. COA96-593

(Filed 5 August 1997)

**1. Trusts and Trustees § 312 (NCI4th)— trustee's breach of fiduciary duty—open, fair and honest dealings—submission of issue to jury**

    In an action by trust beneficiaries alleging breach of fiduciary duty, the trial court did not err in submitting to the jury issues as to whether defendant trustee acted in an "open, fair and honest" manner with regard to various transactions involving the trusts. The "open, fair and honest" defense is not an affirmative defense which must be specifically pleaded but is a rebuttal defense to the presumption of fraud, and defendant trustee presented sufficient evidence for this issue to be submitted to the jury.

1

ESTATE OF SMITH v. UNDERWOOD

[127 N.C. App. 1 (1997)]

**2. Accountants § 19 (NCI4th); Fraud, Deceit, and Misrepresentation § 5 (NCI4th)— failure to disclose tax assessment—breach of fiduciary duty—insufficient evidence**

Plaintiff trust beneficiaries could not recover against defendant accountant and defendant accounting firm for breach of fiduciary duty in failing to promptly advise plaintiffs of a known impending tax assessment against the trusts where plaintiffs' evidence showed only that defendants may have willfully concealed the tax assessment but failed to prove the second element of constructive fraud by showing how this nondisclosure was tied to the consummation of any transaction.

**3. Evidence and Witnesses § 21 (NCI4th)— Internal Revenue Code circular—failure to take judicial notice—absence of prejudice**

Refusal of the trial court to judicially notice an Internal Revenue Code circular requiring an attorney or CPA with knowledge of noncompliance or error to promptly advise the client was not prejudicial error in plaintiff trust beneficiaries' action against a CPA for breach of fiduciary duty in failing to promptly notify them of an impending tax assessment against the trusts because the circular was not relevant to any issue before the court.

**4. Trusts and Trustees § 191 (NCI4th)— attorney and trustee fees—absence of clerk's approval—judgment n.o.v.**

The trial court erred by denying plaintiff trust beneficiaries' motions for judgment n.o.v. as to issues involving the amounts of attorney and co-trustee fees received by defendant from two trusts for which he did not receive approval by the clerk of court where the amounts of the fees and commissions were certain, not disputed, and easily calculable.

**5. Trial § 563 (NCI4th)— amount of damages—denial of motion for new trial**

The trial court did not err in the denial of a trust's motion for a new trial on the issue of damages for professional negligence by defendant attorney and defendant CPA in failing to file an IRS subchapter S corporation election form where the jury awarded the trust the amount of the tax assessment against it but did not award interest on loans used to pay the tax assessment.

**ESTATE OF SMITH v. UNDERWOOD**

[127 N.C. App. 1 (1997)]

**6. Costs § 10 (NCI4th)— expenses not allowed as costs—no abuse of discretion**

The trial court did not abuse its discretion in failing to award plaintiffs costs for expenses incurred for expert witness fees, discovery, subpoenas, transcripts, reproducing documents for use as exhibits, and postage, since those expenses are not expressly allowed as costs by statute.

**7. Accountants § 19 (NCI4th)— negligence in failing to file subchapter S election forms**

The evidence supported the jury's verdict finding that defendant CPA and defendant accounting firm breached their duty of care to a corporation formed by plaintiff trust beneficiaries by failing to file, cause to be filed, or verify the filing of an IRS subchapter S election form with the result that the corporation was treated as a C corporation and required to pay additional taxes of $272,848.

**8. Principal and Agent § 17 (NCI4th)— CPA—agent of corporation—negligence not imputed to corporation through trustee-agent**

Defendant CPA who prepared income tax returns and other documents for plaintiff trust beneficiaries' various trusts and corporations was an agent of one of the corporations, not a subagent of the trustee, where the CPA was hired by the trustee, who was acting as general business agent for the corporation; the accounting firm for which the CPA worked had done accounting work for the trusts since their inception; the CPA was paid by the corporation and did not work solely for the trustee; and there was no evidence that the trustee assumed responsibility for the CPA. Therefore, negligence by the CPA in failing to file subchapter S election forms or to ensure that such forms were filed was not imputed to the corporation through the trustee-agent so as to bar on the ground of contributory negligence its recovery against the CPA and the accounting firm for professional negligence.

**9. Judgments § 650 (NCI4th)— prejudgment interest—award by jury—erroneous instruction—absence of prejudice**

Defendants were not prejudiced by the trial court's erroneous instruction that the jury could award prejudgment interest on the principal amount of damages suffered by plaintiff corporation as a result of defendants' professional negligence where defend-

ants did not object to this instruction and the jury did not award interest.

10. **Judgments § 274 (NCI4th)— collateral estoppel—prior proceeding—issue not adjudicated**

Plaintiff trust beneficiaries' claims to recover trustee commissions and attorney fees was not barred by collateral estoppel where the issue of disgorgement of trustee commissions and attorney fees had not been determined in a prior special proceeding in which plaintiffs unsuccessfully sought to have the trustee removed.

11. **Trusts and Trustees §§ 190, 191 (NCI4th)— trustee commissions and attorney fees—clerk's approval not sought—failure to file annual accountings—breach of fiduciary duty—directed verdict**

The trial court properly directed a verdict that defendant trustee's failure to obtain annual approval of the clerk for commissions and attorney fees and to file annual accountings constituted a breach of fiduciary duty as a matter of law where defendant trustee offered no evidence that he acted in an open, fair and honest manner, and the evidence supported the court's finding that no reasonable juror could find for defendant.

12. **Attorneys at Law § 51 (NCI4th)— trustee commissions— constructive fraud—double damages**

The trial court did not err in awarding double damages under N.C.G.S. § 84-13 in plaintiff trust beneficiaries' action against defendant trustee-attorney to recover commissions not approved by the clerk of court where the trial court found that defendant did not act openly, fairly, and honestly and thus committed constructive fraud.

13. **Attorneys at Law § 45 (NCI4th)— trustee-attorney— breach of fiduciary duty—standard of care of specialist— instruction not required**

In an action to recover for breach of fiduciary duty by defendant trustee-attorney, the trial court did not err by refusing to instruct the jury with respect to the higher standard of care applicable to one who holds himself out as a tax specialist as opposed to that applicable to a general practitioner where there was no evidence that the expertise of a tax specialist was required to perform services undertaken by defendant and no implication in tes-

timony by plaintiffs' experts that defendant, a general practitioner, should be held to the standard of a tax specialist.

**14. Damages § 85 (NCI4th)— constructive fraud—punitive damages**

The trial court properly submitted the issue of punitive damages to the jury where plaintiffs proved at least nominal damages and there was evidence of constructive fraud by defendant.

Appeal by all parties from order entered 21 October 1995, appeal by defendants Sullivan and John C. Proctor & Co. from order entered 20 July 1995 and judgment entered 10 September 1995, and appeal by defendant Underwood from judgment entered 10 September 1995, all by Judge Melzer A. Morgan, Jr., in Pitt County Superior Court. Heard in the Court of Appeals 17 February 1997.

> *Bass, Bryant & Moore, by John Walter Bryant and William E. Moore, Jr., for plaintiffs.*

> *Harris, Shields and Creech, P.A., by Mary V. Ringwalt and Robert S. Shields, Jr., for defendant Underwood.*

> *Womble Carlyle Sandridge & Rice, by Christopher T. Graebe, for defendants Sullivan and John C. Proctor & Company.*

MARTIN, John C., Judge.

Plaintiffs brought this action against defendant Underwood, an attorney, defendant John C. Proctor & Co., an accounting firm, and defendant Sullivan, a certified public accountant and employee of John C. Proctor & Co., alleging professional negligence and breach of fiduciary duty. Plaintiffs sought damages from all defendants and injunctive relief against defendant Underwood to compel him to render an accounting and provide access to trust documents. Plaintiffs also sought to remove defendant Underwood as co-trustee. Their motion for a preliminary injunction and their petition to remove Underwood as co-trustee were consolidated with a related special proceeding and were denied by the trial court. The trial court's denial of the petition to remove defendant Underwood as co-trustee was subsequently upheld by the North Carolina Supreme Court. *Smith v. Underwood*, 336 N.C. 306, 442 S.E.2d 322 (1994).

The case was tried before a jury at the 24 July 1995 civil session of the Superior Court of Pitt County. Briefly summarized to the extent

ESTATE OF SMITH v. UNDERWOOD

[127 N.C. App. 1 (1997)]

necessary for an understanding of the issues raised by this appeal, evidence presented at trial tended to show that on 9 June 1954, W. H. Smith died testate in Pitt County. His Last Will and Testament created two trusts, one for the benefit of his wife, Ada T. Smith, and one for the benefit of his children and their descendants. Both trusts were to terminate at his wife's death. Defendant Underwood and Robert Lee Smith, W. H. Smith's oldest son, were appointed co-trustees of both trusts. Plaintiff James T. Smith was appointed successor co-trustee at Robert Lee Smith's death in 1989.

Underwood filed an initial trust accounting and received approval for attorney's fees and trustee's commissions in 1955. From 1956-1991, Underwood failed to file annual accountings and did not receive specific annual approval from the Clerk of Superior Court for attorney's fees and commissions which he charged the trusts.

In 1983, Underwood advised Mrs. Ada Smith to begin making annual gifts of her trust property in an amount less than $10,000 to each of her children. Both trusts contained real property that had appreciated greatly in value since their formation. Plaintiffs faced a substantial inheritance and estate tax if Ada Smith died while owning this land. Underwood suggested to the heirs and Mrs. Smith that the Smith Heirs Corporation be formed so that land from the trusts could be conveyed into the corporation.

In the summer of 1985, Underwood called defendant Sullivan to discuss the possible formation of the proposed subchapter S corporation. Sullivan and John C. Proctor & Co. had done accounting for the trusts since their inception and had prepared tax filings for plaintiffs' various trusts, corporations, and personal returns throughout said time.

In December 1985, Underwood formed another corporation, Smith-S, Inc., which was to have been a subchapter S corporation pursuant to Internal Revenue Service ("IRS") regulations, so that this new corporation could receive and disperse trust property. Articles of incorporation were prepared and filed by Underwood, and the corporate minutes reflect that the directors and shareholders elected to be treated as a subchapter S corporation pursuant to IRS regulations. However, no IRS form 2553 (the required subchapter S election form) was ever submitted to the IRS.

In 1987, Underwood forwarded information to Sullivan for the preparation of the 1986 tax returns for the trusts and the two family

corporations, and he reminded Sullivan that Smith-S, Inc., was "a subchapter S deal." Sullivan asked for additional information. In response, Underwood prepared and delivered a handwritten sheet which contained the heading "Election," indicating a date of election of 30 December 1985, as well as the date of incorporation and the names and social security numbers of all the shareholders. Sullivan relied on that information and never asked Underwood about the filing of form 2553, for the IRS' confirmation letter concerning subchapter S status, or whether the corporation had fulfilled the requirements for subchapter S treatment. Sullivan completed the 1986 tax return for Smith-S, Inc., on an 1120-S tax form and signed his name as preparer. He completed similar returns for Smith-S, Inc., in 1988, 1989, 1990, and 1991 for each preceding tax year, along with the tax returns for the two testamentary trusts and Smith Heirs Corporation.

In December 1988, Underwood sold a tract of land known as the "Tucker land," formerly trust property, which was at that time owned by the two corporations and the Smith Heirs trust. The land was sold to Collice Moore for $2,350,000.00, with the bulk of the proceeds being paid to Smith-S, Inc. Underwood received an attorney's fee of $72,650.00 for arranging the sale of the "Tucker land."

In April 1990, the IRS sent a letter to Underwood informing him that Smith-S, Inc.'s, 1988 tax return would be processed as a C corporation return since no form 2553 had ever been filed with the IRS. Underwood and Sullivan did not advise their clients of this problem; rather, they corresponded with each other and the IRS in an attempt to avoid the assessment. Plaintiffs were first informed of the problem in May 1991 when James T. Smith received a letter from the IRS that Smith-S, Inc., owed back taxes and penalties. Due to the failure to file form 2553, additional taxes in the amount of $272,848.47, including penalties and interest, were ultimately assessed against Smith-S, Inc. Plaintiffs' effort to challenge the tax assessment was unsuccessful.

The trial court directed a verdict in favor of plaintiffs and against defendant Underwood on plaintiffs' claim for breach of fiduciary duty based upon Underwood's admitted failure to obtain approval of commissions and attorney's fees and failure to file annual accountings. The trial court also directed a verdict in favor of all defendants with regard to plaintiffs' claim for breach of fiduciary duty based upon defendants' failure to promptly disclose the impending IRS tax assessment for over six months. Finally, the trial court directed a verdict in favor of defendants Sullivan and John C. Proctor & Co. as to

all claims for breach of fiduciary duty. Issues were submitted to the jury concerning defendants' professional negligence, damages, the amounts of attorney's fees and co-trustee's fees received by defendant Underwood for which he had not received approval, punitive damages, and whether certain of defendant Underwood's transactions with plaintiffs were "open, fair and honest" and took "no advantage of plaintiffs-trust beneficiaries."

The jury returned a verdict finding that plaintiff Smith-S, Inc., had been damaged by the professional negligence of both Underwood and Sullivan in failing to file form 2553, and awarding damages to Smith-S, Inc., in the amount of $272,848.47. In addition, the jury found that defendant Underwood had received unapproved co-trustee commissions in the amount of $13,073.30 for the W. H. Smith Trust and $5,933.38 for the Ada T. Smith Trust, and unapproved attorney's fees in the amount of $1 for each trust. The jury determined that defendant Underwood had acted in an open, fair, and honest manner and had taken no advantage of plaintiffs with regard to the following transactions: (1) commingling of trust and corporate funds; (2) sale of the "Tucker" land to Collice Moore; (3) refusal to cooperate with his co-trustee; (4) refusal to provide documents or information to beneficiaries; (5) miscalculation of commissions; and (6) receipt of an attorney's fee of $72,650.00 in the sale of the "Tucker" land; but that he had not acted in an open, fair and honest manner in failing to file and obtain approval of annual trust accountings. However, the jury determined that plaintiffs were not entitled to recover any compensatory damages for this failure. Punitive damages in the amount of $37.00 were awarded for Underwood's failure to obtain approval of commissions and in the amount of $37.00 for his failure to file and obtain approval of trust accountings.

After judgment was entered, all parties moved for judgment notwithstanding the verdict; defendant Underwood and plaintiffs moved for a new trial; and plaintiffs moved for relief from the judgment. All post-trial motions were denied and all parties appeal.

## Plaintiff-Appellants' Appeal

[1] Plaintiffs first contend that the trial court erred in submitting to the jury issues as to whether defendant Underwood's various dealings as co-trustee were "open, fair and honest." First, plaintiffs argue that defendant Underwood did not sufficiently plead any affirmative "open, fair and honest" defense to their claim for breach of fiduciary

**ESTATE OF SMITH v. UNDERWOOD**

[127 N.C. App. 1 (1997)]

duty. Second, they contend that even if the defense was properly raised, defendant Underwood failed to offer sufficient evidence of the affirmative defense to carry his burden of proof on the issue.

For a fiduciary duty to exist there must first be a fiduciary relationship, which is a relationship in which "there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Curl v. Key*, 311 N.C. 259, 264, 316 S.E.2d 272, 275 (1984) (*quoting Link v. Link*, 278 N.C. 181, 179 S.E.2d 697 (1971)). Once a plaintiff establishes a *prima facie* case of the existence of a fiduciary duty, and its breach, the burden shifts to the defendant to prove he acted in an "open, fair and honest" manner, so that no breach of fiduciary duty occurred. *Hajmm Co. v. House of Raeford Farms*, 94 N.C. App. 1, 12, 379 S.E.2d 868, 874 (1989), *affirmed in part and reversed in part on other grounds*, 328 N.C. 578, 403 S.E.2d 483 (1991).

The "open, fair and honest" defense is not an affirmative defense to constructive fraud; it merely rebuts the presumption of fraud. In *Watts v. Cumberland County Hospital System, Inc.*, 317 N.C. 110, 116, 343 S.E.2d 879, 884 (1986), our Supreme Court explained how transactions involving parties in a fiduciary relationship can create a rebuttable presumption of fraud:

> When a fiduciary relationship exists between parties to a transaction, equity raises a presumption of fraud when the superior party obtains a possible benefit. "This presumption arises not so much because [the fiduciary] has committed a fraud, but [because] he may have done so." The superior party may **rebut** the **presumption** by showing, for example, "that the confidence reposed in him was not abused, but that the other party acted on independent advice." Once rebutted, the presumption evaporates, and the accusing party must shoulder the burden of producing actual evidence of fraud (citations omitted) (emphasis added).

Thus, the "open, fair and honest" defense is a rebuttal defense to the presumption of fraud. *Id.* A rebuttal defense is not an affirmative defense. *See Adams-Arapahoe Joint School District No. 28-J v. Continental Insurance Co.*, 891 F.2d 772 (10th Cir. 1989) (instruction on affirmative defense erroneous since defense was offered as a rebuttal argument). Since it is not an avoidance or an affirmative defense, it need not be specifically pleaded in the answer. A

denial is all that is required. N.C. Gen. Stat. § 1A-1, Rule 8(b) and (c) (1990).

Here, plaintiffs presented evidence that defendant Underwood, as co-trustee, owed them a fiduciary duty and that he engaged in certain transactions involving the trusts, including paying himself commissions and fees; the burden then shifted to defendant Underwood to prove he acted in an open, fair and honest manner. There was sufficient evidence in the record for a jury to reasonably determine that, in his dealings with the trusts, defendant Underwood acted in an open, fair and honest manner. Defendant Underwood provided the trust beneficiaries with yearly written statements of the expenses and income of each trust. While under his management, the value of the trusts grew significantly. Defendant offered evidence of his negotiation and approval of the sale of the "Tucker land." The submission of the issue of whether defendant Underwood dealt openly, fairly and honestly and took no advantage of the trust beneficiaries with regard to the various transactions alleged by plaintiffs was proper.

[2] Plaintiffs next contend the trial court erred in directing a verdict in favor of all defendants on the issue of their breach of fiduciary duty in failing to "promptly advise" plaintiffs of a known impending tax assessment. Plaintiffs also assert that the trial court erred in not taking judicial notice of Internal Revenue Code Circular 230 § 10.21, requiring an attorney or certified public accountant with knowledge of a client's noncompliance or error to promptly advise the client.

The elements of a constructive fraud claim are proof of circumstances "(1) which created the relation of trust and confidence, and (2) led up to and surrounded **the consummation of the transaction** in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff." *Terry v. Terry*, 302 N.C. 77, 83, 273 S.E.2d 674, 677 (1981), (*quoting Rhodes v. Jones*, 232 N.C. 547, 61 S.E.2d 725 (1950)) (emphasis added).

[3] Although plaintiffs have adequately alleged the circumstances surrounding the formation and development of the alleged confidential relationship between plaintiffs and defendants Sullivan and John C. Proctor & Co., they have failed to identify the specific transactions alleged to have been procured by means of constructive fraud. While defendants may have willfully concealed the pending tax assessment, plaintiffs have failed in their proof of the second element of constructive fraud, specifically how this nondisclosure was tied to the consummation of any transaction. Accordingly, the directed verdict

ESTATE OF SMITH v. UNDERWOOD

[127 N.C. App. 1 (1997)]

in favor of defendants Sullivan and John C. Proctor & Co. on the issue of breach of fiduciary duty was properly granted. Furthermore, the refusal of the court to judicially notice the Treasury Department circular was not prejudicial, as the circular was not relevant to any issue before the court, because plaintiffs failed in their offer of proof of how the nondisclosure was connected to the consummation of any transaction. N.C. Gen. Stat. § 8C-1, Rule 401 (1992).

[4] Plaintiffs next contend the trial court erred in denying their motions for judgment notwithstanding the verdict as to issues involving the amounts of attorney's fees and co-trustee's fees received by defendant Underwood from the two trusts for which he had not received approval from the Clerk of Superior Court. Plaintiffs argue that the attorney's and co-trustee's fees were certain, calculable sums which were not in dispute, and submission of the question to the jury was not required.

There was no dispute as to the amount of attorney's fees and commissions received by Underwood. Defendant Underwood's exhibits reveal that he charged $3,277.00 in unapproved attorney's fees from the W. H. Smith trust for the years 1956-1991, and $1,250.00 in unapproved attorney's fees from the Ada T. Smith trust for the same years. The exhibits also reveal that he received $26,146.60 in unapproved commissions from the W. H. Smith trust, and $11,866.52 in unapproved commissions from the Ada T. Smith trust for the same years. "Ordinarily, it is not permissible to direct a verdict in favor of a litigant on whom rests the burden of proof. When facts are judicially admitted and are no longer a subject of inquiry, then it is not only permissible, but it is the duty of the judge to answer the issue." *Smith v. Burleson*, 9 N.C. App. 611, 612, 177 S.E.2d 451, 452 (1970). The amounts of the attorney's fees and commissions were certain, were not disputed, and were easily calculable. Accordingly, the trial court erred in denying plaintiffs' motions for judgment notwithstanding the verdict, and the case must be remanded to the superior court for entry of directed verdict in favor of plaintiff trustee in the amounts of $1,250.00 in unapproved attorney's fees and $11,866.52 in unapproved commissions for the Ada T. Smith Trust, and $3,277.00 in unapproved attorney's fees and $26,146.60 in unapproved commissions for the W. H. Smith Trust, and for entry of judgment for double damages pursuant to G.S. § 84-13.

[5] Plaintiffs next assign as error the trial court's denial of its motion for a new trial on the issue of damages for professional negligence.

Plaintiff claims that the damages awarded to it were grossly inadequate. Plaintiff offered evidence that it had to borrow hundreds of thousands of dollars to pay the tax penalty, but that the jury failed to compensate it for interest paid on these loans.

"A motion for a new trial on the grounds of inadequate damages is addressed to the sound discretion of the trial court . . . ." *Pelzer v. United Parcel Service*, 126 N.C. App 305, 484 S.E.2d 849, 853 (1997). Reversal on "any ground" should be limited to "those exceptional cases where an abuse of discretion is clearly shown." *Worthington v. Bynum*, 305 N.C. 478, 484, 290 S.E.2d 599, 603 (1982). "[A]n appellate court should not disturb a discretionary Rule 59 order unless it is reasonably convinced by the cold record that the trial judge's ruling probably amounted to a substantial miscarriage of justice." *Id.* at 487, 290 S.E.2d at 605.

The jury awarded plaintiff the amount of the tax assessment. The amount awarded does not appear to be so inadequate as to indicate that the jury was "actuated by bias or prejudice, or that the verdict was a compromise. . . ." *Robertson v. Stanley*, 285 N.C. 561, 569, 206 S.E.2d 190, 195-96 (1974). The cold record in this case does not reveal a substantial miscarriage of justice sufficient to overturn the trial court's ruling. *Roberts v. First-Citizens Bank and Trust Co.*, 124 N.C. App. 713, 478 S.E.2d 809 (1996); *Worthington*, 305 N.C. at 487, 290 S.E.2d at 605. Plaintiffs' motion for a new trial was properly denied.

[6] Finally, plaintiffs assign error to the denial of their motion for costs. Plaintiffs presented to the court a post-trial petition for costs in which they sought $36,176.78 to be taxed as costs, including expenses for three expert witnesses' fees, discovery, subpoena charges, transcript costs, the cost of reproducing documents for use at trial as exhibits, and miscellaneous postage charges. The court awarded costs in the amount of $14,234.38. Plaintiffs contend the trial court abused its discretion.

In North Carolina costs are taxed on the basis of statutory authority. N.C. Gen. Stat. § 6-20 (1986). G.S. § 7A-305 sets forth certain costs which may be assessed in a civil action. Deposition expenses are allowed. *Sealey v. Grine*, 115 N.C. App. 343, 444 S.E.2d 632 (1994). In addition, costs which are not allowed as a matter of course under G.S. § 6-18 or § 6-19, such as in actions for the recovery of real property or personalty, may be allowed in the discretion of the court under G.S. § 6-20, which discretion is not reviewable on appeal.

*Minton v. Lowe's Food Stores*, 121 N.C. App. 675, 468 S.E.2d 513, *disc. review denied*, 344 N.C. 438, 476 S.E.2d 119 (1996). Since the enumerated costs sought by plaintiffs are not expressly provided for by law, it was within the discretion of the trial court whether to award them. Plaintiffs have not shown an abuse of discretion.

### Defendant-Appellants' James Sullivan and John C. Proctor & Co.'s Appeal

**[7]** Defendants Sullivan and John C. Proctor & Co. first contend the trial court erred in denying their motions for directed verdict and judgment notwithstanding the verdict as to the claim of Smith-S, Inc., for professional negligence.

A directed verdict should be granted only if the trial judge could properly conclude that no reasonable juror could find for plaintiffs. *Hajmm Co., supra.* All conflicts in the evidence must be resolved in favor of plaintiffs and the evidence must be viewed in a light most favorable to plaintiffs. *Id.* The standard of review is the same for a motion for judgment notwithstanding the verdict. *See Bryant v. Nationwide Mut. Fire Ins. Co.*, 313 N.C. 362, 329 S.E.2d 333 (1985). When determining the correctness of a trial court's denial of a motion for directed verdict or judgment notwithstanding the verdict, the question is "whether there is sufficient evidence to sustain a jury verdict in the non-moving party's favor . . . or to present a question for the jury." *Davis v. Dennis Lilly Co.*, 330 N.C. 314, 323, 411 S.E.2d 133, 138 (1991) (citations omitted).

In this case, Sullivan acknowledged that he owed Smith-S, Inc., a duty of care. Smith-S, Inc., offered evidence that Sullivan did not file form 2553, nor did he ask Underwood whether form 2553 had been filed. In addition, he did not confirm with the IRS that Smith-S, Inc., had fulfilled all the requirements for subchapter S status. It is generally recognized that an accountant may be held liable for damages naturally and proximately resulting from his failure to use that degree of knowledge, skill and judgment usually possessed by members of the profession in a particular locality. *Snipes v. Jackson*, 69 N.C. App. 64, 316 S.E.2d 657 (1984) (*citing* 1 Am.Jur.2d, Accountants § 15 (1962)). Sullivan was hired to serve as plaintiffs' accountant; he was required to exercise the requisite professional responsibility that goes along with such a position. By not filing, causing to be filed, or verifying the filing of form 2553, Smith-S, Inc., was treated as a C corporation and forced to pay $272,848.47 to the IRS in back taxes and penalties. Because there was sufficient evidence for reasonable

jurors to find that defendant Sullivan breached the duty of care owed to Smith-S, Inc., defendants' motions were properly denied.

[8] Defendants Sullivan and John C. Proctor & Co. next contend that the trial court erred in denying their motion for directed verdict based on the contributory negligence of Smith-S, Inc., and in allowing its motion for directed verdict on the issue. They argue that Sullivan was not an agent of Smith-S, Inc., but a subagent of Underwood. Thus, even if Sullivan was professionally negligent, Underwood, as agent for Smith-S, Inc., also was negligent, and this negligence is imputed to plaintiff Smith-S, Inc., so as to constitute contributory negligence. The record reflects that the court stated: "with regard to the plaintiffs' motion for directed verdict on the Defendant Sullivan's claim— defense of contributory negligence, based on imputed contributory negligence, that motion is granted." The task of the trial court in considering a motion for directed verdict is to determine whether the evidence, viewed in the light most favorable to the non-movant, is sufficient to submit the case to the jury. *Clark v. Perry*, 114 N.C. App. 297, 442 S.E.2d 57 (1994).

A principal agent relationship exists when (1) the agent has authority to act for the principal and (2) the principal has control over the agent. *Colony Associates v. Fred L. Clapp & Co.*, 60 N.C. App. 634, 300 S.E.2d 37 (1983). In an action by a principal against an agent, the agent cannot impute his own negligence to the principal. *Rollison v. Hicks*, 233 N.C. 99, 63 S.E.2d 190 (1951). *See also* 53 A.L.R.3d 673-74 (1973). Where the negligence of two agents concurs to cause injury to the principal, the agents cannot impute the negligence of the fellow agent to bar recovery. *Olympic Products Co. v. Roof Systems, Inc.*, 88 N.C. App. 315, 363 S.E.2d 367, *disc. review denied*, 321 N.C. 744, 366 S.E.2d 862 (1988). However, if either defendant is found to be an independent contractor, that defendant would not be barred from imputing the agent's negligence to plaintiff. *Id.* Also, if one defendant is the subagent of another defendant-agent, then the defendant-agent is responsible to the principal for the conduct of the subagent. *Colony Associates, supra.* A subagent is "a person appointed by an agent empowered to do so, to perform functions undertaken by the agent for the principal, but for whose conduct the agent agrees with the principal to be primarily responsible." Restatement (Second) of Agency § 5(1) (1957). If the agent hires the subagent to carry out the principal's request, the subagent is the agent of the agent only. If the principal directs, either expressly or impliedly, the agent to hire the subagent, the subagent becomes the agent of the principal.

*Colony Associates, supra.* With these rules in mind, the question is whether Sullivan is an agent for plaintiffs, an independent contractor for plaintiffs, or a subagent of agent Underwood.

In this case, Sullivan was hired by Underwood, who was acting as the general business agent for Smith-S, Inc. Sullivan had worked for Proctor & Co. since about 1962, and Proctor & Co. had done accounting work for plaintiffs' trusts since their inception at W. H. Smith's death in 1954. Sullivan and Proctor & Co. prepared the K1 forms for the trusts and corporations. Sullivan has prepared and signed income tax returns for plaintiffs' various trusts and corporations and has performed work for, and been paid by, the principals; he has not worked solely for Underwood. There is no evidence that Underwood assumed responsibility for Sullivan. Thus, the relationship between Sullivan and Smith-S, Inc., was that of principal-agent.

Because there was a principal-agent relationship between Smith-S, Inc., and Sullivan, Sullivan had the burden of proving that Underwood, and not Sullivan, was negligent in order to impute such negligence to Smith-S, Inc., and bar its recovery. *See Stacy v. Jedco Construction, Inc.,* 119 N.C. App. 115, 457 S.E.2d 875, *disc. review denied,* 341 N.C. 421, 461 S.E.2d 761 (1995). In reviewing defendant-appellants Sullivan and Proctor & Co.'s motion for a directed verdict in the light most favorable to Smith-S, Inc., there was sufficient evidence of defendant-appellants' negligence to present a question for the jury. First, there was sufficient evidence to conclude that Sullivan and Proctor & Co. owed a duty to the corporation to file form 2553, or to ensure that it had been filed. There was evidence of an accountant-client relationship with plaintiffs dating back to 1954, that they were counted on to be the tax accountant, and that Smith-S, Inc., was the client of Sullivan and Proctor & Co. at the time when form 2553 should have been filed. There was also expert testimony presented at trial that defendants Sullivan and Proctor & Co. breached the applicable standard of care in failing to follow through to ensure that form 2553 had been filed. Defendant Underwood also testified that he relied on defendant Sullivan to handle all matters with the IRS relating to the formation of Smith-S, Inc. Thus, reasonable jurors could conclude that defendants Sullivan and Proctor & Co. were professionally negligent, and the court properly denied their motion for a directed verdict as to imputed contributory negligence.

**[9]** Finally, defendants Sullivan and Proctor & Co. contend the trial court erred in awarding statutory prejudgment interest to Smith-S,

Inc. They argue that the court's instructions permitted the jury to consider interest and that no additional interest should have been added to the jury award.

North Carolina law expressly provides that interest is added automatically from the date of the filing of the complaint:

> In an action other than contract, the portion of money judgment designated by the fact finder as compensatory damages bears interest from the date the action is instituted until the judgment is satisfied.

N.C. Gen. Stat. § 24-5(b) (1991).

In this case, the trial court instructed as follows:

> Any amount you allow as future damages must be reduced to its present value because a smaller sum now is equal to a larger sum received in the future. Simply, any principle [sic] amounts which you find that Smith S, Inc., had to pay before now due to the negligence of either or both of the defendants or of another employee of John C. Proctor and Company which Smith S, Inc., did not borrow, may be augmented by interest on that principle [sic] sum to date. You may take into account expert testimony received on the issue of total damages.

Thus, the jury was instructed that in considering damages, it could award prejudgment interest on the principal damages suffered by Smith-S, Inc. The instruction was error; however, we decline to disturb the judgment for two reasons. First, defendant did not object to the instruction as required by N.C.R. App. P. 10(b)(2), and second, the jury awarded no interest, as is apparent from the fact that the damage award was identical to the IRS assessment. This assignment of error is overruled.

### Defendant-Appellant Underwood's Appeal

[10] In his first assignment of error defendant Underwood contends the trial court erred in denying his motion for a directed verdict dismissing plaintiffs' claims to recover trustee commissions and attorney's fees since this claim was barred by the doctrine of collateral estoppel. Defendant claims that the issues of trustee commissions and attorney's fees were fully litigated in the earlier special proceeding to remove him as co-trustee.

Collateral estoppel applies when the following requirements are met:

(1) The issues to be concluded must be the same as those involved in the prior action; (2) in the prior action, the issues must have been raised and actually litigated; (3) the issues must have been material and relevant to the disposition of the prior action; and (4) the determination made of those issues in the prior action must have been necessary and essential to the resulting judgment.

*Beckwith v. Llewellyn*, 326 N.C. 569, 574, 391 S.E.2d 189, 191, *reh'g denied*, 327 N.C. 146, 394 S.E.2d 168 (1990) (*quoting King v. Grindstaff*, 284 N.C. 348, 200 S.E.2d 799 (1973)).

The issue in the special proceeding was whether Underwood should be removed as co-trustee. Plaintiffs' prayer for relief was repayment of trustee commissions and attorney's fees. The pertinent issue that was litigated in the present action was whether defendant Underwood breached his fiduciary duty. The prayer for relief also included repayment of trustee commissions and attorney's fees.

While the relief requested in both the petition in the special proceeding and the complaint in the present action included disgorgement of trustee commissions and attorney's fees, the issue was not decided in the special proceeding. Disgorgement is granted in a removal proceeding only if the trustee is removed. *See* N.C. Gen. Stat. § 32-50(j) (1996). The issues of cause for removal of a trustee and breach of fiduciary duty in a damage action require different proof. Since removal did not occur in the special proceeding, the issue of disgorgement was not necessary to the judgment in that proceeding and was not decided. *See Beckwith, supra.* Accordingly, the claim was not barred by the doctrine of collateral estoppel. The motion for directed verdict as to plaintiffs' claim for trustee commissions and attorney's fees was properly denied.

**[11]** Defendant Underwood next contends the trial court erred in directing a verdict that defendant's failure to (1) obtain annual approval of the Clerk for commissions, (2) obtain annual approval of the Clerk for attorney's fees, and (3) file formal annual accountings constituted a breach of fiduciary duty as a matter of law. Defendant argues that these issues were for the jury.

Once a plaintiff establishes a *prima facie* case of breach of fiduciary duty, the burden shifts to the defendant to show he acted in an open, fair and honest manner. *Hajmm Co., supra.* Defendant

ESTATE OF SMITH v. UNDERWOOD

[127 N.C. App. 1 (1997)]

Underwood had a statutory duty to obtain annual approval of the clerk for his attorney's fees and commissions, and to file an annual accounting. N.C. Gen. Stat. §§ 32-50, 32-51 (1996) and N.C. Gen. Stat. § 36A-107 (1995). Underwood breached this duty, yet he offered no evidence to meet his burden of proving that he acted in an open, fair or honest manner in these transactions. The record reflects that Judge Herring *ex mero motu* ordered Underwood to file an accounting within 120 days of the January 1992 hearing, and defendant failed to do so; that defendant Underwood excluded his co-trustee from management of the trust; that he commingled corporate matters with trust matters; and in failing to make the required reports and obtain the required approvals, that defendant Underwood concealed records and information from the beneficiaries. Accordingly, any improper dealing or damages therefrom would have been nearly impossible to detect. Moreover, the mere fact that the trust made money is not sufficient to prove that defendant Underwood acted "openly, fairly and honestly." The court appropriately found that no reasonable juror could find for defendant.

[12] By his next assignment of error defendant Underwood contends that the trial court erred in doubling the commissions awarded by the jury pursuant to G.S. § 84-13.

G.S. § 84-13 provides, "[i]f any attorney commits any fraudulent practice, he shall be liable in an action to the party injured, and on the verdict passing against him, judgment shall be given for the plaintiff to recover double damages." This Court has previously held that this statute applies in cases of actual and constructive fraud. *Booher v. Frue*, 98 N.C. App. 570, 394 S.E.2d 816, *disc. review denied*, 327 N.C. 426, 395 S.E.2d 674 (1990). As co-trustee of plaintiffs' trusts, defendant Underwood had a fiduciary relationship to plaintiffs; the jury found that in the performance of his obligation to file annual accountings, defendant Underwood did not act openly, fairly and honestly, which is tantamount to constructive fraud. *Id.* Thus, the trial court did not err in awarding double damages. N.C. Gen. Stat. § 84-13 (1995).

[13] By his next assignment of error defendant Underwood contends the trial court erred by failing to instruct the jury with respect to the higher standard of care applicable to one who holds himself out as a specialist as opposed to that applicable to a general practitioner. Specifically, defendant Underwood's written request for instructions included the following request: "N.C.P.I 808.10 Medical

Malpractice—Duty to Patient—Specialists (modified for Attorney)." Assuming *arguendo* that the request complied with the requirements of G.S. § 1-181 and G.S. § 1A-1, Rule 51(b), the court's refusal to give the request was not error. There was no evidence that the expertise of a tax specialist was required to perform the services undertaken by defendant Underwood and, contrary to defendant Underwood's argument, there was no implication in the testimony of plaintiffs' expert legal witnesses that defendant Underwood, as a general practitioner, should be held to the standard of a tax specialist. Accordingly, this assignment of error is overruled.

**[14]** By his next assignment of error defendant Underwood contends the trial court erred in submitting the issue of punitive damages to the jury. However, punitive damages are allowed where a plaintiff has proven at least nominal damages and where an element of aggravation, such as fraud, causes the injury. So long as there is "some fact or circumstance" in evidence from which fraud or another element of aggravation can be inferred, the question of punitive damages is for the jury and not for the court. *Ingle v. Allen*, 69 N.C. App. 192, 198, 317 S.E.2d 1, 4, *disc. review denied*, 311 N.C. 757, 321 S.E.2d 135 (1984) (citations omitted).

By his final assignment of error defendant Underwood contends the trial court erred in denying his motion for judgment notwithstanding the verdict and a new trial. Specifically, defendant argues that a directed verdict should not have been granted on the constructive fraud claim and, because of this error, defendant was prejudiced on the professional negligence claim. We have already found that the directed verdict was properly granted.

The issues of professional negligence and constructive fraud were completely distinct. One involved the failure of the defendants to file a form 2553 and secure S-corporation status for Smith-S, Inc. The other issue involved the failure to obtain approval of attorney's fees and commissions, and to file annual accountings. Nothing in the record indicates any juror confusion between the two issues. The mere fact that the jury verdict on the professional negligence claim was adverse to defendant Underwood is not sufficient to show that the court's directed verdict on the issue of constructive fraud must have been prejudicial. Accordingly, defendant Underwood's motion for judgment notwithstanding the verdict and new trial was properly denied.

Plaintiff's Appeal—No error in part, remanded in part.

Appeal of defendants Sullivan and John C. Proctor & Co.—No error.

Appeal of defendant Underwood—No error.

Chief Judge ARNOLD and Judge WALKER concur.