Loftin v. QA Invs., LLC, 2018 NCBC 11.

STATE OF NORTH CAROLINA
COUNTY OF WAKE
IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
03 CVS 16882

PETER T. LOFTIN,

        Plaintiff,

    v.

QA INVESTMENTS, LLC and
QUELLOS GROUP, LLC,

        Defendants.

**ORDER & OPINION ON
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
PLAINTIFF'S MOTION PURSUANT
TO RULE 56(f)**

1. THIS MATTER is now before the Court on Defendants' Motion for Summary Judgment ("Defendants' Motion") and Plaintiff Peter T. Loftin's Motion for a Rule 56(f) Continuance Regarding Defendant QA's Motion for Summary Judgment ("Plaintiff's Motion") (collectively the "Motions"). For the reasons discussed below, the Court GRANTS Defendants' Motion and DENIES Plaintiff's Motion.

> *The Brocker Law Firm, P.A., by Crystal S. Carlisle and Douglas J. Brocker and Eagan Avenatti, LLP, by Michael Avenatti (pro hac vice), for Plaintiff.*

> *Parker Poe Adams & Bernstein, LLP, by William L. Rikard, Jr., Deborah L. Edney, James C. Lesnett, Jr., and Sarah Fulton Hutchins and Steptoe & Johnson LLP, by Gwendolyn Prothro Renigar (pro hac vice), for Defendants.*

Gale, Chief Judge.

## I. INTRODUCTION

2. Plaintiff Peter T. Loftin ("Loftin") brought claims against several defendants arising from their involvement in creating, executing, and selling two tax investment schemes—Foreign Leveraged Investment Program ("FLIP") and Bond Linked Issue Premium Structure ("BLIPS")—which were designed to avoid taxation

on income, but resulted in Loftin owing substantial tax deficiencies to the Internal Revenue Service ("IRS").

3. Loftin's only remaining claims are against Defendants QA Investments, LLC and Quellos Group, LLC (collectively, "QA"). QA conducted the investment transactions for FLIP, but not for BLIPS. However, Loftin claims that QA is liable for his losses associated with both transactions because he would not have invested in BLIPS if he had known that FLIP was illegal.

4. After the completion of a nine-month discovery period, QA now moves for summary judgment, contending that Loftin has not put forward sufficient evidence to establish either that Loftin suffered damages or that QA's conduct caused any damage that Loftin suffered. Loftin opposes the motion, contending that the present record is adequate to defeat summary judgment, but, if not, that he is entitled, under Rule 56(f) of the North Carolina Rules of Civil Procedure ("Rule 56(f)"), to a continuance to conduct additional discovery on contested issues raised by Defendants' Motion.

5. The Court concludes, first, that Loftin is not entitled to a Rule 56(f) continuance because he failed to diligently conduct discovery during the nine-month discovery period. The Court then concludes that Loftin has failed to forecast evidence demonstrating that he is entitled to recover damages from QA, which is an essential element of each of his claims; therefore, QA is entitled to judgment as a matter of law and Loftin's Second Amended Complaint must be dismissed with prejudice.

## II. THE PARTIES

### A. Current Parties

6. Loftin is or was a resident of Wake County, North Carolina.

7. QA Investments, LLC is a Delaware company with its principal place of business in Seattle, Washington. QA Investments was an investment advisor registered under the Investment Advisors Act of 1940, but discontinued its investment advisory services effective April 8, 2000. (Second Am. Compl. ¶ 2, ECF No. 60; Answer Second Am. Compl. ¶ 2, ECF No. 63.)

8. Quellos Group, LLC is a Delaware company with its principal place of business in Seattle, Washington and is the parent of QA Investments.

### B. Former Defendants

9. Former defendant, KPMG, LLP ("KPMG") is a Delaware limited-liability partnership headquartered in New York, New York. (Am. Compl. ¶ 2, ECF No. 19.) Loftin settled and voluntarily dismissed his claims against KPMG with prejudice on November 20, 2013. (*See* Voluntary Dismissal with Prejudice, ECF No. 33.)

10. Former defendant, Wachovia Bank, N.A., the successor of First Union National Bank (collectively, "FUNB"), is a banking corporation with its principal place of business in North Carolina. (Compl. ¶ 3, ECF No. 1.) Loftin settled and voluntarily dismissed his claims against FUNB with prejudice. (Mem. Supp. Defs.' Mot. Summ. J. Ex. 46, at 1–2, ECF No. 92.3.)

11. Former defendant, Sidley Austin Brown & Wood, LLP ("Sidley Austin") is a Delaware limited-liability partnership with its principal place of business in

Chicago, Illinois. (Am. Compl. ¶ 7.) Sidley Austin is the successor-in-interest to Brown & Wood, LLP. Loftin settled and voluntarily dismissed his claims against Sidley Austin with prejudice on November 20, 2013. (*See* Voluntary Dismissal with Prejudice.) The Court has been advised as to the amounts of the confidential settlements with these defendants. Those amounts are not material to the Court's ruling on the Motions.

12. Former defendants, Presidio Growth, LLC and Presidio Advisory Services, LLC (collectively, "Presidio"), are Delaware companies with their primary places of business in San Francisco, California. (Am. Compl. ¶¶ 5–6.) Presidio served as the investment advisor for BLIPS and was named as a defendant in Loftin's initial complaints but then omitted from his Second Amended Complaint. *See Loftin v. QA Invs. LLC*, No. 03-CVS-16882, 2015 NCBC LEXIS 44, at *3 (N.C. Super. Ct. Apr. 30, 2015); (Second Am. Compl. ¶¶ 1–4.) The record suggests that Presidio is no longer a going concern.

## III.    PROCEDURAL HISTORY

13. Loftin filed his original complaint on December 15, 2003. The case was designated as an exceptional case and assigned to the Honorable Ben F. Tennille on July 25, 2006.

14. On November 8, 2006, Loftin filed his First Amended Complaint, alleging claims against KPMG, Sidley Austin, QA, and Presidio, including civil conspiracy and facilitation of fraud, fraud, negligent misrepresentation, professional negligence, and breach of contract. (Am. Compl. ¶¶ 140–81, 196–211, 216–19.) Loftin

omitted his claims against FUNB from the First Amended Complaint because he pursued those claims in arbitration. (*See* Am. Compl. ¶ 8; Mem. Supp. Defs.' Mot. Summ. J. Ex. 46, at 2–3.)

15. By consent, this case was indefinitely stayed on January 5, 2007, pending resolution of proceedings before the United States Tax Court.

16. Loftin reached settlement agreements with FUNB, effective May 2009, and with KPMG and Sidley Austin, effective November 2013, as a result of which all claims against those parties were dismissed with prejudice. (*See* Mem. Supp. Defs.' Mot. Summ. J. Ex. 46.)

17. Loftin sought damages from KPMG and Sidley Austin arising from both FLIP and BLIPS. The settlement agreements did not allocate the settlement payments between these claims or provide a basis for doing so. (Aff. Pl. Peter T. Loftin Supp. Pl.'s Opp'n Def. QA's Mot. Summ. J. ("Loftin Aff.") ¶ 43, ECF No. 106.)

18. In 2011, the case was assigned to the undersigned following Judge Tennille's retirement. The case remained stayed.

19. The Court held a status conference on September 19, 2014, after which the stay was lifted at Loftin's request.

20. On October 21, 2014, QA moved to dismiss Loftin's claims of civil conspiracy, fraud, breach of fiduciary duty, constructive fraud, negligent misrepresentation, and unfair or deceptive trade practices ("Chapter 75").

21. On April 30, 2015, the Court dismissed Loftin's negligent misrepresentation and Chapter 75 claims, but allowed Loftin's other claims to

proceed. *Loftin*, 2015 NCBC LEXIS 44, at *35. The Court also granted Loftin leave to amend his complaint. *Id.*

22. Loftin filed his Second Amended Complaint on May 29, 2015, which omitted the claims against Presidio, leaving QA as the sole defendant. The Second Amended Complaint asserted claims for (1) civil conspiracy and facilitation of fraud, (2) fraud, (3) breach of fiduciary duty, (4) constructive fraud, (5) negligent misrepresentation, and (6) violation of Chapter 75.

23. On July 1, 2015, QA moved to strike Loftin's Chapter 75 and negligent misrepresentation claims based on the Court's earlier rulings. The Court granted the motion on November 10, 2015. (*See* Order Mot. Strike, ECF No. 68.)

24. Between August 2015 and April 22, 2016, the parties engaged in limited expedited discovery, pursuant to which Loftin provided additional information related to the monies he received as a result of prior settlements related to this action.

25. The parties filed a Joint Case Management Report ("CMR") on March 31, 2016, jointly proposing a nine-month fact discovery period, followed by sixty days to identify experts and make the proper expert disclosures. (Joint Case Management Report ("CMR") 2–3, ECF No. 77.). The parties were unable to agree on the number of depositions that should be allowed or number of experts each party should be permitted, but otherwise agreed on the discovery schedule. (CMR 2.) Absent an agreement by the parties or order by the Court, the General Rules of Practice and Procedure for the North Carolina Business Court ("Business Court Rules") provide

that each party is permitted to take twelve fact depositions. *See* N.C. Bus. Ct. R. 18.2 (2006); *see also* N.C. Bus. Ct. R. 10.4(c) (2017).

26. The Court held a Case Management Conference on April 21, 2016, and entered a Case Management Order on April 22, 2016, which adopted the CMR with a few specified exceptions, which are not material to this Order & Opinion. (*See* Case Management Order, ECF No. 79.) The parties were then free to take discovery, including depositions. To avoid any doubt, when deferring its ruling on whether the parties would be permitted to take more depositions than permitted by the Business Court Rules, the Court advised that "[t]he parties [were] free to commence discovery." (Case Management Order ¶ 3.)

27. The Court held status conferences with the parties on August 22, 2016, December 21, 2016, and March 8, 2017. During these conferences, the Court addressed discovery issues that had arisen. The Court issued an order setting a deadline for responses to outstanding discovery requests and a deadline for when the parties needed to meet and confer about any additional discovery disputes. (*See* Order ¶¶ 1, 3, ECF. No. 82.) At the March 8, 2017 conference the Court reminded Loftin's counsel that he had been free to pursue discovery and designate experts at all times after the stay was lifted. During that same conference, QA notified Loftin that it planned to move for summary judgment on the issues of causation and damages, giving Loftin two months' notice prior to Defendants' Motion being filed. Loftin still did not notice any depositions although the Court expressly gave him permission to do so.

28.     On May 4, 2017, QA moved for summary judgment on all claims.

29.     Loftin moved for a Rule 56(f) continuance on July 7, 2017. Loftin contends that he needs a continuance in order to complete the following discovery: (1) "discovery from third parties, such as KPMG, regarding the nature of the transaction at issue," (2) "deposition discovery from QA itself regarding its own awareness of [the] illegality of" FLIP and BLIPS, and (3) "expert discovery . . . regarding the nature and amount of Loftin's damages." (Pl. Mem. Supp. Mot. R. 56(f) Continuance Regarding Def. QA's Mot. Summ. J. 3–5, ECF No. 111.)

30.     On August 29, 2017, the Court heard argument on the Motions, which are now ripe for disposition.

## IV.     FACTUAL BACKGROUND

31.     The Court does not make findings of fact when ruling on a motion for summary judgment, but for context may state either those facts that it believes are not in material dispute or those facts on which a material dispute forecloses summary adjudication. The following statement of facts is solely for the purpose of this Order & Opinion. Both Loftin and QA have filed statements of undisputed facts. (*See* Defs.' Statement of Undisputed Material Facts ("Defs.' Undisputed Facts"), ECF No. 89; Pl.'s Resp. Defs.' Statement of Undisputed Material Facts ("Pl.'s Undisputed Facts"), ECF No. 113.)

32.     Further background on this litigation is available in this Court's previous decision. *See Loftin*, 2015 NCBC LEXIS 44.

## A.    Loftin's FLIP Purchase

33.    Loftin is the founder and former CEO of BTI Communications, Inc. ("BTI"), a telecommunications company located in Raleigh, North Carolina. (Loftin Aff. ¶ 3.) In 1997, Loftin expected capital gains of approximately $30,000,000 from selling his interest in FiberSouth to BTI. (Loftin Aff. ¶ 4.)

34.    Loftin maintained a long-standing business relationship with FUNB and asked FUNB for advice regarding his anticipated gains. (Defs.' Undisputed Facts ¶ 3; Pl.'s Undisputed Facts ¶ 3.)

35.    FUNB recommended and arranged for Loftin to meet with KPMG. (Defs.' Undisputed Facts ¶ 4; Pl.'s Undisputed Facts ¶ 4.)

36.    During a meeting on August 7, 1997, KPMG representatives recommended that Loftin invest in FLIP. (Defs.' Undisputed Facts ¶ 5; Pl.'s Undisputed Facts ¶ 5.) KPMG and FUNB continued to recommend FLIP to Loftin in subsequent communications and meetings. (Defs.' Undisputed Facts ¶ 5; Pl.'s Undisputed Facts ¶ 5.)

37.    Relying in part on the reputation and expertise of KPMG and FUNB, Loftin ultimately purchased FLIP. (Defs.' Undisputed Facts ¶ 6; Pl.'s Undisputed Facts ¶ 6.)

38.    On August 15, 1997, Loftin executed an Engagement Letter with KPMG for FLIP. (Defs.' Undisputed Facts ¶¶ 7–8; Pl.'s Undisputed Facts ¶¶ 7–8.) At that time, Loftin had not met with or reviewed any material from QA, and there is no

evidence that he was then familiar with QA. (*See* Defs.' Undisputed Facts ¶ 11; Pl.'s Undisputed Facts ¶ 11.)

39. At the recommendation of KPMG, Loftin executed an Investment Advisory Agreement with QA on September 3, 1997. (*See* Defs.' Undisputed Facts ¶¶ 15–16; Pl.'s Undisputed Facts ¶¶ 15–16.)

40. Loftin understood that QA, working in conjunction with KPMG, would execute the investment trades for FLIP, but he did not meet, communicate, or inquire about the investment trades with QA prior to committing to FLIP. (Defs.' Undisputed Facts ¶¶ 10, 12–13; Pl.'s Undisputed Facts ¶¶ 10, 12–13.)

41. Pursuant to the Investment Advisory Agreement, QA began executing the investment trades for FLIP on September 5, 1997. (Defs.' Undisputed Facts ¶ 17; Pl.'s Undisputed Facts ¶ 17.) Between September 1997 and May 12, 1999, QA performed numerous transactions to implement FLIP on Loftin's behalf. (*See* Second Am. Compl. ¶ 29(d)–(dd)(ii).)

42. Loftin received tax opinions from KPMG and Sidley Austin advising that if FLIP was challenged by the IRS "it was more likely than not" that the capital losses Loftin claimed from FLIP would be held to comply with IRS rules and regulations. (Defs.' Undisputed Facts ¶ 21; Pl.'s Undisputed Facts ¶ 21.)

43. KPMG prepared Loftin's tax returns for the three years that involved the FLIP transactions—1997, 1998, and 1999. (*See* Defs.' Undisputed Facts ¶ 23; Pl.'s Undisputed Facts ¶ 23.)

44.     Loftin did not request or receive any tax opinion or advice from QA nor did QA prepare any tax returns for Loftin. (Defs.' Undisputed Facts ¶¶ 22, 24–25; Pl.'s Undisputed Facts ¶¶ 22, 24–25.)

**B.     QA's Role in Creating and Implementing FLIP**

45.     A KPMG representative reached out to QA in May 1996 seeking assistance in designing the investment aspects of FLIP. (Pl.'s Mem. Opp'n Def. QA's Mot. Summ. J. Ex. 17, at 134, ECF No. 108.) KPMG provided QA with the "specific criteria under which to develop the financial transactions." (Pl.'s Mem. Opp'n Def. QA's Mot. Summ. J. Ex. 17, at 134.)

46.     The FLIP transaction was ultimately the subject of hearings before a United States Senate Subcommittee that investigated "the development, marketing, and implementation of abusive tax shelters by professional organizations." (Pl.'s Mem. Opp'n Def. QA's Mot. Summ. J. Ex. 16, at 1, ECF No. 108; *see also* Pl.'s Mem. Opp'n Def. QA's Mot. Summ. J. Ex. 17.) As a part of those proceedings, QA "noted that [for FLIP] the tax structure was developed first, and the investment strategy was then incorporated into the tax structure." (Pl.'s Mem. Opp'n Def. QA's Mot. Summ. J. Ex. 17, at 134.) The Subcommittee issued a report finding that QA "was fully aware that FLIP was a 'tax motivated transaction' designed for companies or individuals 'requiring a tax loss.'" (Pl.'s Mem. Opp'n Def. QA's Mot. Summ. J. Ex. 16, at 82.)

47.     At the Senate Subcommittee hearings, a QA representative testified that QA "had taken action to register with the IRS the FLIP transaction promoted by

PwC, but not the FLIP transaction for KPMG," explaining "that it acted in accordance with the guidance provided by the two accounting firms, one of which advised it to register and the other of which advised it that registration was unnecessary." (Pl.'s Mem. Opp'n Def. QA's Mot. Summ. J. Ex. 17, at 134.)

## C. Loftin's BLIPS Purchase

48. In 1999, Loftin worked with KPMG, FUNB, and Sidley Austin to execute BLIPS, a second investment tax strategy. (Defs.' Undisputed Facts ¶ 26; Pl.'s Undisputed Facts ¶ 26.) BLIPS, like FLIP, was developed to create "large paper losses that the purchaser of the product then uses to offset other income, and shelter it from taxation." (Pl.'s Mem. Opp'n Def. QA's Mot. Summ. J. Ex. 16, at 5.)

49. QA was not involved in executing investment trades for BLIPS. (Defs.' Undisputed Facts ¶¶ 29–30; Pl.'s Undisputed Facts ¶¶ 29–30.) Instead, Presidio was the investment advisor for BLIPS. (Defs.' Undisputed Facts ¶ 27; Pl.'s Undisputed Facts ¶ 27.) In fact, Presidio first brought the idea of BLIPS to KPMG and "was thoroughly involved in the development, marketing, and implementation of the product." (Pl. Mem. Opp'n Def. QA's Mot. Summ. J. Ex. 16, at 83.)

50. In 2000, Loftin took deductions relating to BLIPS on his tax returns.[1] (Defs.' Undisputed Facts ¶ 28; Pl.'s Undisputed Facts ¶ 28.)

---

[1] The last tax year for which Loftin took a loss related to FLIP was 1999. While the record is unclear as to whether Loftin took a deduction related to BLIPS on his 1999 tax return, Loftin's summary of his damages claim includes back taxes related to BLIPS for both 1999 and 2000. For purposes of the Motions, the Court assumes, without deciding, that Loftin took a deduction relating to BLIPS on both his 1999 and 2000 tax returns.

51.     Over the course of his investment in BLIPS, Loftin did not request or receive any tax opinions or advice from QA.  (Defs.' Undisputed Facts ¶¶ 29–30; Pl.'s Undisputed Facts ¶¶ 29–30.)

## D.     Loftin's Claimed Losses

52.     In or before October 2000, the IRS audited Loftin's 1997, 1998, and 1999 federal tax returns, which included deductions for the losses associated with FLIP.  (Defs.' Undisputed Facts ¶ 32; Pl.'s Undisputed Facts ¶ 32.)

53.     KPMG and others represented Loftin on his audits; but QA was not involved.  (Defs.' Undisputed Facts ¶¶ 33–34; Pl.'s Undisputed Facts ¶¶ 33–34.)

54.     Ultimately, the IRS disallowed the capital losses claimed in connection with FLIP and assessed Loftin with tax deficiencies and penalties, as well as interest on the back taxes and penalties.  (Loftin Aff. ¶ 41; *see also* Mem. Supp. Defs.' Mot. Summ. J. Ex. 47 ("Pl.'s Interrog. Resp."), at 8–10, ECF No. 91.1.)

55.     In December 2002, Loftin filed suit against KPMG, FUNB, Sidley Austin, Presidio, and QA in the United States District Court for the Southern District of Florida.  (Defs.' Undisputed Facts ¶ 35; Pl.'s Undisputed Facts ¶ 35.)  In 2003, the district court dismissed Loftin's complaint in its entirety on ripeness grounds, because Loftin could not establish that he had suffered an injury as no tax deficiency had been assessed at that time.  *Loftin v. KPMG LLP*, 02-81166-CIV-RYSKAMP/VITUNAC, 2002 U.S. Dist. LEXIS 26909, at *24–25, 29 (S.D. Fla. Sep. 10, 2003).

56. In 2006, Loftin petitioned the United States Tax Court for relief related to the IRS's challenge of FLIP. (Defs.' Undisputed Facts ¶ 38; Pl.'s Undisputed Facts ¶ 38.)

57. On November 12, 2010, the United States Tax Court entered an order stating that Loftin's personal income tax returns for the taxable years 1997, 1998, and 1999 were deficient. (*See* Mem. Supp. Defs.' Mot. Summ. J. Ex. 19, ECF No. 91.37.)

58. Loftin contends that as a result of FLIP he owed the IRS:

- $5,509,573 in back taxes, $2,203,829 in penalties, and interest on back taxes and penalties for 1997;

- $282,564 in back taxes, $113,026 in penalties, and interest on back taxes and penalties for 1998; and

- $232,861 in back taxes, $93,144 in penalties, and interest on back taxes and penalties for 1999. (Defs.' Undisputed Facts ¶¶ 41–42; Pl.'s Undisputed Facts ¶¶ 41–42; *see also* Pl.'s Interrog. Resp. at 8.)

59. Loftin also claims that, as a result of FLIP, North Carolina assessed tax deficiencies and that he owed the state:

- $2,275,754 in back taxes, $568,939 in penalties, and interest on back taxes and penalties for 1997;

- $119,829 in back taxes, $29,957 in penalties, and interest on back taxes and penalties for 1998; and

- $90,845 in back taxes, $22,711 in penalties, and interest on back taxes and penalties for 1999. (Pl.'s Interrog. Resp. at 8; *see also* Loftin Aff. ¶ 42(a).)

60.     It appears that Loftin is also seeking to recover transaction costs associated with FLIP, totaling $3,917. (Pl.'s Mem. Opp'n Def. QA's Mot. Summ. J. 8.) Loftin and QA dispute whether Loftin realized a net profit from his FLIP investment. (*See* Defs.' Undisputed Facts ¶ 18; Pl.'s Undisputed Facts ¶ 18.) QA contends that Loftin actually realized a net profit because the FLIP investment netted a $3,917 gain after deducting the known out-of-pocket expenses. (Defs.' Undisputed Facts ¶ 18.) Loftin acknowledges that he netted $3,917; however, he contends that because FLIP was designed to produce a loss for tax purposes it is impossible to separate the investment result from the tax result to determine whether there was a net gain. (*See* Pl.'s Undisputed Facts ¶ 18.)

61.     Loftin also seeks damages associated with BLIPS, including federal and state back taxes, penalties, and interest on back taxes and penalties.

62.     Specifically, Loftin claims that, in connection with BLIPS, the IRS assessed tax deficiencies for the taxable years 1999 and 2000 and that he owed the IRS:

- $21,431,968 in back taxes, $8,572,787 in penalties, and interest on back taxes and penalties for 1999; and

- $4,151,751 in back taxes, $1,660,700 in penalties, and interest on back taxes and penalties for 2000. (Pl.'s Interrog. Resp. at 8; *see also* Loftin Aff. ¶ 42(b).)

63. Loftin also claims that, in connection with BLIPS, North Carolina assessed tax deficiencies for the taxable years 1999 and 2000 and that he owed the state:

- $7,312,015 in back taxes, $1,828,004 in penalties, and interest on back taxes and penalties for 1999; and

- $1,484,027 in back taxes, $371,007 in penalties, and interest on back taxes and penalties for 2000. (Pl.'s Interrog. Resp. at 8; *see also* Loftin Aff. ¶ 42(b).)

64. Loftin also seeks to recover BLIPS' "transaction" losses, amounting to $6,381,235, and BLIPS' professional fees, totaling $1,023,369. (Pl.'s Interrog. Resp. at 9–10.)

65. Finally, it appears that Loftin is seeking to recover charges from the IRS and the North Carolina Department of Revenue due to Loftin's failure to timely pay the back taxes, penalties, and interest on back taxes and penalties. (*See* Pl.'s Interrog. Resp. at 8.)

66. In total, Loftin seeks to recover $107,187,582 consisting of $21,478,831 for FLIP losses and $85,708,751 for BLIPS losses. (*See* Pl.'s Interrog. Resp. at 8–10.)

## V.    STANDARD OF REVIEW

67.    Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2015). "Summary judgment is improper if any material fact is subject to dispute." *Culler v. Hamlett*, 148 N.C. App. 389, 391, 559 S.E.2d 192, 194 (2002).

68.    The movant bears the burden of proving the lack of a triable issue. *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001). "The movant may meet this burden by proving an essential element of the opposing party's claim is nonexistent, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim . . . ." *Goodman v. Wenco Foods, Inc.*, 333 N.C. 1, 21, 423 S.E.2d 444, 458 (1992) (quoting *Collingwood v. G.E. Real Estate Equities*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989)). The Court must view all the presented evidence in the light most favorable to the nonmoving party. *Dalton*, 353 N.C. at 651, 548 S.E.2d at 707.

69.    Once the moving party demonstrates that there is no genuine issue as to any material fact, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." N.C. Gen. Stat. § 1A–1, Rule 56(e). Merely reciting the allegations set forth in the pleadings or making conclusory statements will not suffice to defeat a motion for summary judgment. *See S.C. Telecomm. Grp. Holdings v. Miller Pipeline LLC*, ___ N.C. App. ___, 788 S.E.2d 634,

636–37 (2016) (quoting *Van Reypen Assocs., Inc. v. Teeter*, 175 N.C. App. 535, 540, 624 S.E.2d 401, 404–05 (2006)) ("More than allegations are required because anything less would allow plaintiffs to rest on their pleadings, effectively neutralizing the useful and efficient procedural tool of summary judgment.").

70.     Specifically, a claim for damages will survive summary judgment only if the evidence presented by the nonmoving party "allow[s] the finder of fact to calculate the amount of damages with reasonable certainty." *McAdoo v. Univ. of N.C.*, 225 N.C. App. 50, 65, 736 S.E.2d 811, 822 (2013) (quoting *Olivetti Corp. v. Ames Bus. Sys. Inc.*, 319 N.C. 534, 547–48, 356 S.E.2d 578, 586 (1987)). A party is not required to prove his damages with absolute certainty, "but evidence of damages must be sufficiently specific and complete to permit the jury to arrive at a reasonable conclusion." *Perfecting Serv. Co. v. Prod. Dev. & Sales Co.*, 259 N.C. 400, 417, 131 S.E.2d 9, 22 (1963) (quoting *Tills v. Calvine Cotton Mills*, 251 N.C. 359, 366, 111 S.E.2d 606, 612 (1959)); *see Carter v. Clements Walker PLLC*, No. 08-CVS-4333, 2014 NCBC LEXIS 1, at *15 (N.C. Super. Ct. Jan. 10, 2014) (finding that a "speculative, bare-bones conclusion is insufficient to create a genuine issue of material fact on whether [the party] suffered damages").

71.     If the nonmovant has valid reasons for why he is unable to present facts necessary to oppose the motion for summary judgment, he may seek a continuance "to permit affidavits to be obtained or depositions to be taken or discovery to be had," pursuant to Rule 56(f). N.C. Gen. Stat. § 1A-1, Rule 56(f). "To prevail on a Rule 56(f) motion, the [party seeking the continuance] has the burden of showing why additional

discovery is necessary and how that discovery will create a genuine issue of material fact." *Ripellino v. N.C. Sch. Bds. Ass'n*, 158 N.C. App. 423, 426, 581 S.E.2d 88, 91 (2003).

72. Rule 56(f) "is designed as a stopgap measure to prevent the improvident or premature grant of summary judgment" and to assist an opposing party who "simply needs a little more time to present his side of the case." G. Gray Wilson, *N.C. Civil Procedure*, § 56-11, at 56-35 (3rd ed. 2007). But "Rule 56(f) is not a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that his opposition is meritorious." *Willmar Poultry Co. v. Morton-Norwich Prod.*, 520 F.2d 289, 297 (8th Cir. 1975).[2]

73. While courts agree that Rule 56(f) "should be liberally applied to allow sufficient time to complete discovery," *Fla. Nat'l Bank v. Satterfield*, 90 N.C. App. 105, 109, 367 S.E.2d 358, 361 (1988), it "will not be liberally applied to aid parties who have been lazy or dilatory." Wright & Miller, Federal Practice & Procedure, § 2740 (4th ed. Apr. 2017).

74. Ultimately, "the decision to grant a continuance rests in the trial court's discretion." *Fla. Nat'l Bank*, 90 N.C. App. at 109, 367 S.E.2d at 361. Courts consider factors such as "the nature of the uncompleted discovery[;] . . . how those facts are reasonably expected to create a genuine issue of material fact; . . . what efforts the [party] has made to obtain those facts; . . . [and] why those efforts were unsuccessful."

---

[2] North Carolina courts have "long held that federal decisions interpreting the federal rules are persuasive authority when interpreting similar state rules." *Tetra Tech Tesoro, Inc. v. JAAAT Tech. Servs., LLC*, __ N.C. App. __, 794 S.E.2d 535, 539 (2016); *Compare* Fed. R. Civ. P. 56(d), *with* N.C. Gen. Stat. § 1A-1, Rule 56(f).

*Bonnie & Co. Fashions v. Bankers Tr. Co.*, 945 F. Supp. 693, 706 (S.D.N.Y. 1996). Courts also consider whether the discovery sought was in the sole control of the party moving for summary judgment, recognizing that such discovery may be more difficult for the nonmovant to obtain. *See* G. Gray Wilson, *N.C. Civil Procedure*, § 56-11, at 56-36 (3rd ed. 2007) (explaining that when the evidence sought "lies within the sole possession of the [party moving for summary judgment]" and the opposing party "has not yet had a reasonable opportunity to acquire [such evidence]," then the court "should be particularly receptive to a request for more time by the opposing party").

75.    However, "when the evidence sought by the party resisting summary judgment is in the exclusive control of that party, Rule 56(f) does not allow for more time to conduct discovery." *Nelson v. Tenn. Gas Pipeline Co.*, No. 95-112, 2002 U.S. Dist. LEXIS 13620, at *24 (W.D. Tenn. June 10, 2002). Nor is a Rule 56(f) continuance appropriate when the additional evidence sought does not relate to the summary judgment arguments. *See Cullen v. Valley Forge Life Ins. Co.*, 161 N.C App. 570, 582, 589 S.E.2d 423, 432 (2003) (finding the trial court did not err by granting summary judgment where the additional discovery requested was unrelated to the legal issues on which summary judgment was granted).

### VI.    ANALYSIS

### A.    <u>Loftin is not entitled to a Rule 56(f) continuance.</u>

76.    Loftin moves for a Rule 56(f) continuance to conduct discovery regarding QA's knowledge of the illegality of FLIP and to develop expert testimony on damages.

77. Loftin had several months to conduct discovery but failed to avail himself of the opportunity. Loftin seeks to excuse his lack of diligence by contending that the Court never set a specific discovery deadline and never resolved the dispute as to the number of fact depositions or expert designations allowed. To the contrary, the Case Management Order expressly adopted the CMR filed by the parties, which set a nine-month fact discovery period, starting on April 22, 2016, to be followed by expert discovery. (CMR 2–3.) Loftin was not precluded from conducting discovery, at least up to the Court's presumptive limits. *See* N.C. Bus. Ct. R. 18.2 (2006) ("Depositions are presumptively limited to twelve (12) depositions each (not including depositions of testifying experts) . . . ."). And the Court specifically ordered that "[t]he parties [were] free to commence discovery." (Case Management Order ¶ 3.)

78. Nevertheless, Loftin has never noticed any depositions. The Court held three status conferences between August 2016 and March 8, 2017. At no time during those conferences did Loftin ever suggest he was waiting to begin discovery until the Court ruled on the number of depositions allowed. At the March 8, 2017 conference, QA notified Loftin that it planned to move for summary judgment on the issues of causation and damages, giving Loftin two months' notice prior to filing Defendants' Motion. During that conference, Loftin stated that he would need discovery to respond to any summary judgment motion. In response, the Court expressly advised him that he should conduct the necessary discovery and that it would address any objections to such discovery when and if QA made them. But Loftin again choose not to conduct any depositions.

79.     Rule 56(f) is not designed to assist parties who made no efforts to complete discovery. *See Pina v. Children's Place,* 740 F.3d 785, 795 (1st Cir. 2014) (affirming the district court's refusal to allow a continuance where the party sought additional time to take depositions but had "failed to request a single deposition prior the court's initial [discovery] deadline"); *Guzman-Ruiz v. Hernandez-Colon,* 406 F.3d 31, 35 (1st Cir. 2005) (affirming the district court's denial of a Rule 56(f) continuance where "there was no diligence exercised during the three months . . . after the motion for summary judgment surfaced"). Loftin was not entitled to merely sit back and allow the discovery time to run out without making any efforts to conduct discovery or request an extension of the discovery period. *See Rivera-Torres v. Rey-Hernandez,* 502 F.3d 7, 10 (1st Cir. 2007) ("Rule 56(f) is not designed to give relief to those who sleep upon their rights."). Therefore, Loftin's delay in pursuing discovery is alone sufficient to deny his Rule 56(f) request. *See Rocky Mt. Biologicals, Inc. v. Microbix Biosystems, Inc.,* 986 F. Supp. 2d 1187, 1201 (D. Mont. 2013) (quoting *Mackey v. Pioneer Nat. Bank,* 867 F.2d 520, 524 (9th Cir. 1989) ("A party is not entitled to additional discovery . . . 'if it fails diligently to pursue discovery before summary judgment.'"); *see also Rivera-Almodovar v. Instituto Socioeconomico Comunitario,* 730 F.3d 27, 29 (1st Cir. 2013) (affirming the district court's denial of a motion seeking a continuance where the plaintiff "sat on her hands for nearly a year before requesting the disputed documents" and the court found that she had "slumbered through discovery and never seasonably availed herself of the discovery-enforcement tools that were at her disposal").

80. The continuance is further unjustified because the three categories on which Loftin seeks additional discovery do not warrant a continuance. The Court will separately address those three categories.

81. In the first category, Loftin seeks to take discovery from third parties, such as KPMG, regarding the lawfulness of the FLIP and BLIPS transactions as well as "KPMG's subsequent admissions in the Deferred Prosecution Agreement [("DPA")]." (Pl.'s Mem. Supp. Mot. R. 56(f) Continuance Regarding Def. QA's Mot. Summ. J. 4.) Specifically, Loftin requests to take the deposition "of a person most qualified at KPMG to discuss the DPA itself, its negotiation, and the admissions in the Statement of Facts included as part of the DPA." (Pl.'s Mem. Supp. Mot. R. 56(f) Continuance Regarding Def. QA's Mot. Summ. J. 4.)

82. There is no apparent reason why Loftin could not have pursued discovery from KMPG and other former defendants either before or after settling with them during the long course of this litigation. The DPA on which Loftin now seeks discovery was executed on August 26, 2005. (Pl.'s Mem. Opp'n Def. QA's Mot. Summ. J. Ex. 18, at 1, ECF No. 108.) And, significantly, Defendants' Motion is not based on contested liability issues, but is limited to Loftin's failure to develop competent evidence of actual damages caused by QA.[3] Therefore, to the extent that the requested discovery is sought to establish QA's liability rather than to demonstrate Loftin's damages, the discovery is not necessary to oppose Defendants' Motion.

---

[3] Although QA also moved for summary judgment on the basis that Loftin cannot prove that he reasonably relied on QA, which would defeat his claim for fraud, the Court need not reach that argument. Therefore, any Rule 56(f) request for a continuance on the grounds that discovery is needed to oppose QA's reasonable reliance argument is moot.

83. Accordingly, Loftin has failed to demonstrate how the requested third-party discovery would create a dispute of material fact regarding causation or damages, and therefore it does not support a Rule 56(f) continuance. *See Rocky Mt. Biologicals, Inc.*, 986 F. Supp. 2d at 1203 (finding that the requested discovery was insufficient to support a continuance "because it [wa]s not essential to [plaintiff's] opposition to [defendant's] summary judgment motion").

84. In his second category, Loftin seeks "to take deposition discovery from QA itself regarding its own awareness of [the] illegality of the transactions." (Pl.'s Mem. Supp. Mot. R. 56(f) Continuance Regarding Def. QA's Mot. Summ. J. 4.) Like the first category of requested discovery, this discovery is primarily directed to QA's potential liability but not to damages or causation. The Court should not allow a continuance based on mere speculation that the discovery might lead to relevant facts regarding Loftin's damages. *See Rivera-Torres*, 502 F.3d at 12 ("Speculative conclusions, unanchored in facts, are not sufficient to ground a Rule 56(f) motion."). Once again, there is no reasonable reason Loftin could not have already pursued this discovery.

85. In his third category, Loftin seeks to develop evidence related to his entitlement to damages. Specifically, he asserts that he is entitled to a continuance so that he can obtain expert testimony on the nature and amount of his damages. Loftin has offered no explanation for why he has failed to already identify an expert on this issue. In any event, QA contends that Loftin is not entitled to recover back taxes, penalties, and interest as damages. The Court considered QA's position but

finds it to be incorrect; however, the Court further concludes that Loftin has not shown that he is entitled to a continuance to develop evidence of damages.

**B.    Back Taxes**

**(1)    Back taxes are recoverable under certain circumstances.**

86.    QA's primary contention is that back taxes are not recoverable as a matter of law because damages are intended to return a plaintiff to the position he would have been had the wrongful act never occurred. (*See* Mem. Supp. Defs.' Mot. Summ. J. 21.) QA acknowledges that back taxes might be recoverable if such taxes would not be owed but for a defendant's wrongful acts. (*See* Mem. Supp. Defs.' Mot. Summ. J. 21 n. 17.) QA argues, however, that Loftin's tax liability was not caused by FLIP, but rather Loftin invested in FLIP for the express purpose of avoiding tax liability from capital gains, which would have been owed even if the FLIP transactions had never occurred. (*See* Mem. Supp. Defs.' Mot. Summ. J. 21.)

87.    Loftin admits that his capital gains, unless offset by deductions, would create tax liability. However, he contends that tax liability does not attach immediately to earned income or capital gains, as QA contends, because if such income is offset by losses before taxes are assessed then tax liability is not incurred. (Pl.'s Mem. Opp. Def. QA's Mot. Summ. J. 16–18 (citing *Eckert Cold Storage, Inc. v. Behl*, 943 F. Supp. 1230, 1234 (E.D. Cal. 1996)).) Loftin asserts that if QA had not misrepresented FLIP and he had known FLIP was illegal, he would have made alternative investments, which would have legally offset, or minimized, the tax liability incurred from his capital gains.

88.     North Carolina appears to allow plaintiffs to recover back taxes as damages when tax liability is incurred as a direct result of wrongful conduct, such as professional negligence. *See Estate of Smith v. Underwood*, 127 N.C. App. 1, 13–14, 487 S.E. 2d 807, 815 (1997).  In *Estate of Smith v. Underwood*, the North Carolina Court of Appeals affirmed the jury's award of back taxes where the accountant's negligence caused the plaintiff to incur additional tax liability it would not otherwise have incurred. *Id.* There, the accountant failed to file the proper tax election forms for an S corporation, resulting in the corporation being taxed as a C corporation and causing additional tax liability beyond what would have been due had the corporation been taxed as an S corporation. *Id.*

89.     Other jurisdictions have adopted a similar standard allowing the recovery of back taxes if such taxes would not have been owed but for some professional negligence. *See, e.g.*, *Eckert Cold Storage, Inc.*, 943 F. Supp. at 1234 (stating that "plaintiffs may be entitled to damages due to the tax liability, if they can prove this liability was caused by [the defendant's] negligent or fraudulent advice and would not otherwise have been incurred"); *Maese v. Garrett*, 329 P.3d 713, 717 (N.M. Ct. App. 2014) (stating "where the tax liability is caused by the negligent advice or wrongful conduct and would not have been incurred *but for* the negligent advice or wrongful conduct, there is no prohibition on the recovery of the tax liability"); *Hosfelt v. Miller*, No. 97-JE-50, 2000 Ohio App. LEXIS 5506, at *14 (Ohio Ct. App. Nov. 22, 2000) ("Although necessary taxes may not constitute an injury to a client's interests, taxes which could have been avoided by the exercise of the knowledge, skill[,] and

ability ordinarily possessed and exercised by legal professionals under similar circumstances can be considered as an injury."); *O'Bryan v. Ashland*, 717 N.W.2d 632, 638 (S.D. 2006) (acknowledging there is no prohibition on the recovery of tax liability as long as the taxpayer would not have incurred the liability absent negligent advice).

90.    Some jurisdictions have also applied this but-for test in cases involving fraud, in which plaintiffs sought to recover back taxes that were assessed because of their participation in an allegedly fraudulent tax shelter. *See Seippel v. Jenkins & Gilchrist P.C.*, 341 F. Supp. 2d 363, 384–85 (S.D.N.Y. 2004) (applying Virginia law). In *Seippel v. Jenkins*, the defendant moved to strike the plaintiffs' damages claim for back taxes, interest, and professional fees, but the district court denied the motion. *Id.* at 385.  The court found that applicable Virginia law allowed plaintiffs to recover back taxes that were caused by the defendant's fraud as long as plaintiffs were able to prove with "reasonable certainty" that the allegedly fraudulent tax shelter "caused them to forego alternative tax shelters" that would have minimized their tax liability. *Id.* at 384.

91.    QA relies heavily on New York's minority rule that back taxes are never recoverable because awarding back taxes would grant plaintiffs a windfall. *See, e.g.*, *Gaslow v. KPMG, LLP*, 797 N.Y.S.2d 472, 473 (N.Y. App. Div. 2005); *Alpert v. Shea Gould Climenko & Casey*, 559 N.Y.S.2d 312, 314–15 (N.Y. App. Div. 1990).  However, the Court cannot square this minority rule with the North Carolina Court of Appeals' decision in *Estate of Smith*.

92.     The Court concludes that it should apply the but-for test to determine whether a plaintiff may recover back taxes as a result of a professional's negligence or fraud and that back taxes may be recovered if the but-for test is satisfied. *See Estate of Smith*, 127 N.C. App. at 13–14, 487 S.E.2d at 815.

**(2)     Loftin has failed to come forward with or forecast evidence sufficient to create a triable issue of fact as to whether he would have successfully minimized his tax liability but for QA's wrongful conduct.**

93.     Loftin contends that if he had known that FLIP was an illegal tax shelter, he would have made alternative investments to avoid taxation on his capital gains. However, he has offered no fact or expert evidence of other investments he could have pursued that would have generated losses that the IRS would allow.

94.     It is well settled that a party cannot rely solely on conclusory statements unsupported by specific facts to defeat a motion for summary judgment. *See Nasco Equip. Co. v. Mason*, 291 N.C. 145, 152, 229 S.E.2d. 278, 283 (1976); *see also Frank H. Conner Co. v. Spanish Inns Charlotte, Ltd.*, 294 N.C. 661, 675, 242 S.E.2d 785, 793 (1978) ("[W]hen the moving party presents an adequately supported motion, the opposing party must come forward with facts, not mere allegations, which controvert the facts set forth in the moving party's case, or otherwise suffer a summary judgment."). A plaintiff's affidavit that repeats the essential allegations of his complaint does not sufficiently support conclusory allegations. *See Lowe v. Bradford*, 305 N.C. 366, 371, 289 S.E.2d 363, 367 (1982).

95.     Loftin repeatedly seeks to blame QA for his tax deficiency and claims that "[a]s a direct and proximate result of the FLIP Conspirators' conspiracy, [he]

suffered damages" which included foregoing "alternative investments, and reasonable and legitimate tax minimization planning and implementation." (Second Am. Compl. ¶ 81(d).) But he has offered no evidence of any alternative, legal tax shelters in which he could have invested.

96. Loftin's affidavit merely repeats the same conclusory allegations contained in his Second Amended Complaint. He has not sufficiently raised a triable issue of material fact regarding whether he could have invested in an alternative and legal tax shelter that would have successfully eliminated or minimized his tax liability. Thus, he has failed to forecast evidence that would allow a jury to determine that QA's wrongful conduct caused his tax liability.

97. To the extent Loftin believes that expert testimony could provide sufficient evidence to prove QA's acts caused his tax liability, he has been free to pursue such expert testimony throughout the course of the litigation. Loftin has failed to provide the Court with a basis to allow a continuance to obtain such expert testimony, because he has failed to identify an expert who will testify that there were alternative, legal tax shelters available to minimize his tax liability. There is no legitimate reason why Loftin could not have already identified an expert to offer a preliminary opinion based on facts within Loftin's control. *See Glynn v. Stoneville Furniture Co.*, 85 N.C. App. 166, 168, 354 S.E.2d 552, 553 (1987) (affirming the trial court's denial of plaintiff's motion for a Rule 56(f) continuance when the plaintiff's affidavit did "not detail any facts, as required by Rule 56(f), necessary to justify his opposition to [defendant's] motion for summary judgment which plaintiff could not

present by affidavit"); *see also Landmark Dev. Corp. v. Chambers Corp.*, 752 F.2d 369, 372–73 (9th Cir. 1985) (affirming the district court's refusal to allow additional discovery where the plaintiff offered no reasonable explanation for its failure to promptly take the depositions it contended were necessary).

98.    With no fact evidence or expert opinion to support Loftin's conclusory argument, there is no basis for a jury to find that Loftin would not have owed back taxes but for QA's wrongful conduct. Accordingly, the Court concludes, as a matter of law, that Loftin cannot recover the federal or state back taxes he incurred in connection with FLIP and BLIPS from QA.

## C.    Loftin has failed to forecast evidence demonstrating that there is a triable issue on whether he is entitled to recover penalties and interest.

99.    Loftin separately seeks to recover penalties and interest assessed on back taxes and penalties.

100.    Jurisdictions have adopted different approaches to determine whether interest on a tax underpayment may be recovered. *See Ronson v. Talesnick*, 33 F. Supp. 2d 347, 352–53 (D. N.J. 1999) (noting split of authority). The majority view is that if back taxes are otherwise recoverable, interest on those back taxes is also recoverable. *See e.g., O'Bryan*, 717 N.W.2d at 638–39 (refusing to adopt a blanket rule forbidding interest recovery and affirming the jury's award of interest on tax underpayment); *Jobe v. Int'l Ins. Co.*, 933 F. Supp. 844, 860 (D. Ariz. 1995) (holding an injured plaintiff in a tax malpractice case may recover interest paid on back taxes); *Jerry Clark Equip., Inc. v. Hibbits*, 612 N.E.2d 858, 861–63 (Ill. App. Ct. 1993)

(affirming the jury's award of interest on an otherwise avoidable tax liability that was incurred due to an accountant's negligence); *Wynn v. Estate of Holmes*, 815 P.2d 1231, 1236 (Okla. Civ. App. 1991) (holding that plaintiffs were entitled to recover interest paid because of an accountant's negligence in preparing federal income tax returns). The minority view prohibits the recovery of interest because the taxpayer was able to use the money that would have otherwise been paid to the IRS and the time value of that money is at least equal to any interest that would be awarded, meaning that the recovery of interest would constitute a windfall. *See e.g.*, *Eckert Cold Storage, Inc.*, 943 F. Supp. at 1235 ("[I]nterest paid to the I.R.S. represents a payment for the plaintiffs' use of the tax money during the period after the taxes came due and before they were paid; as such . . . interest is not a proper element of damages."); *Alpert*, 559 N.Y.S.2d at 315. An intermediate approach has also developed in which a court will allow interest to be recovered, but "the plaintiff's recovery [is] reduced by any benefits received from the wrongdoers' actions," such as interest earned through investing the tax money. *Ronson*, 33 F. Supp. 2d at 354–55.

101. North Carolina law aligns with the majority approach and allows interest to be recovered as long as the interest was incurred because of the defendant's wrongful conduct. *See Estate of Smith*, 127 N.C. App. at 13–14, 487 S.E.2d at 815 (affirming the jury award that included additional taxes, penalties, and interest). Thus, if a plaintiff sufficiently proves that a defendant is the but-for cause of his back taxes then a plaintiff is entitled to recover the interest paid on the back taxes. *See id.*

102. Because Loftin has failed to demonstrate that he is entitled to recover back taxes, he has also failed to establish that there is a triable issue on whether he is entitled to recover interest. The Court finds that the same reasoning precludes Loftin from recovering penalties associated with his tax assessments.

**D.**     **Loftin has not presented sufficient evidence to create a triable issue as to whether he suffered North Carolina tax damages.**

103. The Court's conclusions discussed above apply both to Loftin's claims to recover federal and state tax assessments. Loftin's claims related to North Carolina state tax assessments also fail because he failed to present sufficient evidence to establish he incurred North Carolina back taxes, penalties, and interest.

104. Loftin claims that he owes back taxes, penalties, and interest to the State of North Carolina resulting from the FLIP and BLIPS' deductions, but he does not provide any evidentiary support for such claim. Despite QA's demand to do so, Loftin has not produced, and does not identify or make specific reference to, any external documents or other sources that corroborate his alleged North Carolina tax assessment. (*See* Loftin's Aff. ¶¶ 39, 42.) Loftin simply makes conclusory statements with no corresponding factual support.

105. Loftin outlines his alleged North Carolina damages in a table. (*See* Pl.'s Interrog. Resp. at 8.) The table alone is insufficient for a fact finder to determine with reasonable certainty Loftin's damages based on his North Carolina tax assessment. Loftin contends that documents bearing bates numbers LOFTIN-QUELLOS-00001-LOFTIN-QUELLOS-00196 support his claimed North Carolina damages. (Pl.'s Interrog. Resp. at 11–12.) The Court has reviewed these documents

and concludes that they provide no evidence of Loftin's claimed North Carolina tax damages, but only include evidence of Loftin's attorneys' fees, tax consulting fees, and federal tax damages. (*See* Pl.'s Mem. Opp'n Def. QA's Mot. Summ. J. Ex. 12, ECF No. 109 (containing documents LOFTIN-QUELLOS 00104-63 which provide evidence of federal back taxes, penalties, and interest); Pl.'s Mem. Opp'n Def. QA's Mot. Summ. J. Ex. 13, ECF No. 109 (containing documents LOFTIN-QUELLOS 00164-96 which provide evidence of federal back taxes, penalties, and interest); Pl.'s Mem. Opp'n Def. QA's Mot. Summ. J. Ex. 14, ECF No. 109 (containing documents LOFTIN-QUELLOS 00001-00095 which provide evidence of attorneys' fees incurred in handling tax matters); Pl.'s Mem. Opp'n Def. QA's Mot. Summ. J. Ex. 15, ECF No. 109 (containing documents LOFTIN-QUELLOS 00096-00104 which provide evidence of tax consulting fees).)

106.   Significantly, Loftin has not produced his relevant North Carolina tax returns, deficiency notices, or audits. He has further failed to produce any bank records showing that he has made such payments to the State of North Carolina.

107.   It is obvious that Rule 56(f) does not allow Loftin any relief for failure to produce his own documents or documents under his control. The Court concludes that Loftin has failed to come forward with evidence adequate to create a triable issue of fact on his entitlement to recover North Carolina tax-related damages, whether related to FLIP or BLIPS, and any claim based on such losses must be dismissed.

E.   **Even assuming damages might otherwise be recoverable and are adequately documented, Loftin has failed to produce or forecast competent evidence that QA caused any loss arising from Loftin's investment in BLIPS.**

108. The record demonstrates that in the summer of 1999, Loftin participated in BLIPS with KPMG, FUNB, and Sidley Austin, but not QA. (Defs.' Undisputed Facts ¶¶ 26, 30; Pl.'s Undisputed Facts ¶¶ 26, 30.) Presidio, not QA, was the investment advisor for BLIPS. (Defs.' Undisputed Facts ¶ 27; Pl.'s Undisputed Facts ¶ 27.) It is undisputed that Loftin never contacted QA to inquire about BLIPS or any other tax strategy. (Defs.' Undisputed Facts ¶¶ 29–30; Pl.'s Undisputed Facts ¶¶ 29–30.)

109. The Second Amended Complaint makes no allegations tying QA to BLIPS, and Loftin has come forward with no evidence suggesting otherwise. Instead, Loftin asserts that "[a]s a direct and proximate result of the FLIP Conspirators' conspiracy, Loftin suffered damages including . . . [that] [h]e made other investment and business decisions and participated in other tax strategies and was also deprived of alternative investments, and reasonable and legitimate tax minimization planning and implementation." (Second Am. Compl. ¶81(d).) That is, he claims that "[h]ad [he] known of FLIP's true nature," he would not have invested in BLIPS. (Loftin Aff. ¶ 38.) These conclusory allegations are too speculative to allow Loftin to recover BLIPS related damages from QA based on general rules of proximate cause.

110. "[A] tortfeasor 'is responsible . . . for all indirect or consequential damages which are the natural and probable effect of the wrong, under the facts as they exist at the time the same is committed and which can be ascertained with a reasonable degree of certainty.'" *Hopkins v. MWR Mgmt. Co.*, No. 15-CVS-697, 2017 NCBC LEXIS 92, at *28–29 (N.C. Super. Ct. Oct. 3, 2017) (quoting *Bowen v. Harris*,

146 N.C. 385, 390, 59 S.E. 1044, 1047 (1907)). "Proximate cause is defined as 'a cause which in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries, and without which the injuries would not have occurred[.]'" *Self v. Yelton*, 201 N.C. App. 653, 659, 688 S.E.2d 34, 38 (2010) (quoting *Hairston v. Alexander Tank & Equip. Co.*, 310 N.C. 227, 233, 311 S.E.2d 559, 565 (1984)).

111. Here, Loftin must establish that QA's "actions were 'a substantial factor . . . of the *particular* injuries for which [he] seeks recovery.'" *Id.* (quoting *Brown v. Neal,* 283 N.C. 604, 611, 197 S.E.2d 505, 509 (1973)). If an act breaks "the causal link" between QA's misconduct and Loftin's damages, then QA's misconduct is not a proximate cause of such damages. *Williams v. Lynch*, No. COA14-769, 2014 N.C. App. LEXIS 1410, at *21 (N.C. Ct. App. Dec. 31, 2014).

112. There is nothing in the record connecting QA to BLIPS. No evidence suggests that KPMG or Presidio relied on QA in forming or marketing BLIPS. While not necessarily dispositive, the Senate Subcommittee report, upon which Loftin relies, suggests that any connection between QA and BLIPS is too remote, because "BLIPS was developed as a replacement for OPIS which was developed as a replacement for FLIP," and "Presidio initially brought the idea for BLIPS to KPMG." (Pl.'s Mem. Opp'n Def. QA's Mot. Summ. J. Ex. 16, at 5, 83.) The Senate Subcommittee report never suggests that QA had any involvement with the creation or implementation of BLIPS. (*See* Pl.'s Mem. Opp'n Def. QA's Mot. Summ. J. Ex. 16, at 5, 81–83.)

113. Loftin admits that he never contacted QA seeking tax advice regarding BLIPS or any other tax strategy. (Defs.' Undisputed Facts ¶¶ 29–30; Pl.'s Undisputed Facts ¶¶ 29–30.) Loftin offers no evidence suggesting that QA had reason to know that its involvement with FLIP would lead Loftin to invest in a separate tax strategy with a different investment advisory firm.

114. In sum, while other independent grounds support dismissing Loftin's claims related to the tax assessments incurred in connection with BLIPS, the Court further concludes that Loftin's claims to recover back taxes, penalties, interest, professional fees, and transactional costs associated with BLIPS fail because Loftin has not presented or forecasted any evidence that would allow a fact finder to reasonably conclude that QA was a proximate cause of any damage Loftin suffered as a result of investing in BLIPS.

115. Further, the Court finds no basis under Rule 56(f) to allow Loftin any additional opportunity to pursue discovery in hopes of supporting his claim.

**F.     Loftin's claims for transactional costs related to FLIP must be dismissed.**

116. Loftin has suggested that he is entitled to recover "out of pocket expenses totaling $3,917 for FLIP." (Pl.'s Mem. Opp. Def. QA's Mot. Summ. J. 8.) The record is clear that Loftin has a net transaction gain of $3,917 from his FLIP investments. (*See* Pl. Interrog. Resp. at 9.) Based on the record, Loftin incurred $4,111,255 in costs associated with FLIP, but gained $4,115,172 through those transactions. (Pl. Interrog. Resp. at 8–9.) In fact, Loftin admits that he netted $3,917. (Pl. Interrog. Resp. at 9.) However, Loftin still argues that he is entitled to recover

$3,917 because FLIP was designed to produce a loss for tax purposes and the transactional gain cannot be separated from the tax-related damages. (*See* Pl.'s Undisputed Facts ¶ 18.) The Court rejects this argument and concludes that Loftin is not entitled to recover any transaction costs or net gain associated with FLIP.

**G.** **Loftin's claims must be dismissed because he failed to produce or forecast evidence of actual damages.**

117. To survive summary judgment, a plaintiff must present a forecast of evidence with respect to each of the essential elements of his claims. While some causes of action allow nominal damages, others "require as an essential element . . . that [the] plaintiff incur actual damage[s]." *Hawkins v. Hawkins*, 101 N.C. App. 529, 532, 400 S.E.2d 472, 474 (1991).

118. Loftin's remaining claims are: (1) civil conspiracy and facilitation of fraud, (2) fraud, (3) constructive fraud, and (4) breach of fiduciary duty. Each of these claims include the essential element of actual damages. *See Piedmont Inst. of Pain Mgmt. v. Staton Found.*, 157 N.C. App. 577, 590, 581 S.E.2d 68, 76 (2003) (explaining that damages are an essential element of claims for breach of fiduciary duty, fraud, and constructive fraud); *see also Di Frega v. Pugliese*, 164 N.C. App. 499, 505–06, 596 S.E.2d 456, 461 (2004) ("A claim for civil conspiracy consists of: (1) an agreement between two or more persons; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) which agreement *results in injury to the plaintiff*.") (emphasis added); *Jay Group, Ltd. v. Glasgow*, 139 N.C. App. 595, 599–600, 534 S.E.2d 233, 236 (2000) ("The elements of a constructive fraud claim are proof of circumstances '(1) which created the relation of trust and confidence, and (2) led up to and

surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust *to the hurt of plaintiff*.'" (quoting *Estate of Smith*, 127 N.C. App. at 10, 487 S.E.2d at 813) (emphasis in original); *Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974) (stating the essential elements of a fraud claim are: "(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive (4) which does in fact deceive, (5) *resulting in damage to the injured party*") (emphasis added); *Wortman v. Hutaff*, No. 10-CVS-4082, 2013 NCBC LEXIS 47, at *18 (N.C. Super. Ct. Oct. 29, 2013) ("To maintain a claim for breach of fiduciary duty, Plaintiffs must have sustained some actual damage.").

119.   Loftin has failed to forecast sufficient evidence to demonstrate he is entitled to recover actual compensatory damages from QA; therefore, each of his claims must be dismissed. *See Piedmont Inst. of Pain Mgmt.*, 157 N.C. App. at 590, 581 S.E.2d at 76 (affirming the trial court's grant of summary judgment where the plaintiff "failed to forecast evidence of actual damages proximately caused by the negligent, fraudulent, and deceptive practices of" the defendants).

## H.   Loftin cannot recover punitive damages.

120.   It is well-established that "[p]unitive damages do not and cannot exist as an independent cause of action," meaning "[i]f the injured party has no cause of action independent of a supposed right to recover punitive damages, then he has no cause of action at all." *See Hawkins*, 101 N.C. App. at 532, 400 S.E.2d at 474 (quoting

J. Stein, *Damages and Recovery*, § 195 at 389 (1972)). Because Loftin no longer has an independent cause of action, he cannot recover punitive damages.

## VII. CONCLUSION

121. Based on the foregoing, the Court concludes, first, that Loftin is not entitled to a Rule 56(f) continuance and that Defendants' Motion should be determined on the developed record. Based on that record, the Court concludes that Loftin is not entitled to recover any of the damages he seeks in this litigation because: (1) there is insufficient evidence to support Loftin's claim that QA's alleged wrongful acts caused him to incur federal and North Carolina back taxes, penalties, and interest; (2) there is insufficient evidence to support Loftin's claim that he was assessed back taxes, penalties, and interest by the State of North Carolina; (3) there is insufficient evidence to support Loftin's contention that QA's wrongful acts were a proximate cause of any loss Loftin may have suffered because of his investments in BLIPS; and (4) there is no basis on which Loftin can recover damages representing the net gain he made from the FLIP investments. Loftin did not produce or forecast evidence to support the recovery of actual damages. Because Loftin's claims do not allow an award of nominal damages, each of his claims fail.

122. The Court need not separately address QA's other contentions concerning Loftin's failure to rely on any representation by QA, QA's entitlement to an offset of the settlement funds, and the potential bar of claims by application of the economic loss doctrine.

123. Based on the foregoing, the Court orders as follows:

a. Plaintiff's Motion is DENIED;

b. Defendants' Motion is GRANTED; and

c. The Second Amended Complaint is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED, this the 1st day of February, 2018.

/s/ James L. Gale

James L. Gale
Chief Business Court Judge